## LA FAYETTE BOLDEN *et al.*

*v.*

## JAMES D. SHERMAN.

*Filed at Ottawa March 26, 1884.*

1. COLOR OF TITLE—*defined.* Color of title is that which in appearance is a title, but in reality is not. It must be so far *prima facie* good in appearance as to be consistent with the idea of good faith. It must purport to transfer, and apparently transfer, the title to the holder.

2. SAME—*extent, as to boundaries.* A deed purporting to convey two lots of land in a subdivision, by their numbers, where the plat and stakes showed the precise location of the lots sold, was held color of title to the entire lots as shown by the plat and stakes, notwithstanding one of the lots, as shown by other testimony, extended six feet over and upon an adjoining tract, and the description in the deed showing distances did include the six feet on the adjoining land. The monuments always prevail over distances.

3. . LIMITATION—*act of 1839 — as to the payment of taxes — proof in respect thereto.* Where a party having color of title shows the payment of all taxes on the premises for seven successive years, by the production of his tax receipts, showing the date of each payment and the amount thereof, this makes out a *prima facie* defence under the Limitation law of 1839, which must prevail unless the plaintiff shows that the taxes for some one of the seven years were paid. before the defendant made his payment. The testimony of the plaintiff, that he, by himself or agent, paid the taxes upon the same land for each of the same years, but not giving the amount or date of any of his payments, will not rebut the defendant's *prima facie* case, and defeat the operation of the statute.

4. In an action of ejectment for a strip of land, the defence being the payment of taxes for seven years under color of title, the defendant admitted that the plaintiff had paid the taxes for the same seven years, and undertook to overcome the force and effect of the admission by proving that he had also paid taxes for the same years, but failed to show whose payments for the several years were first made: *Held,* that the evidence was not sufficient to overcome the admission. Such admission was held to impliedly concede that the plaintiff's payments were first made, otherwise there could be no taxes for him to pay.

5. BOUNDARIES—*monuments, as prevailing over distances—meaning of descriptive words, how ascertained.* Monuments showing the boundaries of a lot conveyed, must prevail over the distances given in the description. The surroundings under which the language of a deed is used may be considered, to give a proper construction to the words, and that part of a description which the parties must be supposed most fully to understand, will govern. And where a lot is sold as platted, the fences and surveyor's marks upon the ground, as, stakes, are facts indicating its boundaries, and will prevail over an attempt to· describe the lot by distances.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This is an action of ejectment, brought by Sherman, appellee, against Bolden and Stevens, appellants, to recover a strip of land six feet wide in its front on State street, and running eastward 144 feet to an alley, the north line of said strip being 927 feet south of the north line of fractional quarter-section 22,—otherwise described as six feet in width, from front to rear, of the north side of lot 8, in block 10, in assessor's division of the north-west fractional quarter of section 22, etc., and also as being the north six feet in width, along

the north side of lot 1, in Gurley's subdivision of said lot 8, and part of lot 7,—the property being in possession of Bolden, as tenant of Stevens, who claims as owner.

Plaintiff proved title in himself to this strip, acquired by him by conveyance from Augustus Garrett, to him, by deed dated August 14, 1847, and recorded November 2, 1847, conveying a tract 110 feet wide, of which this strip was part, and on the north line. But plaintiff never was in the actual possession of this strip of six feet. Defendant proved that Augustus Garrett, at the time of this conveyance to Sherman, was the owner in fee of the land next adjoining the land conveyed to Sherman on the north, for a width of 267 feet, fronting that distance on State street, and extending east to Wabash avenue. The land next north of this he had conveyed to Mrs. Seaman, at an earlier day. Augustus Garrett died about February, 1849, but before his death, inclosed his land with a fence. But the fence on the south side, instead of being placed on the true line between the land of Sherman and that of Garrett, was placed six feet south of that line, and upon the land of Sherman, so as to include this strip within his inclosure. Whether the north line of this inclosure was more than 267 feet north of the fence on the south, does not appear. After the death of Augustus Garrett, the title to this 267 feet of land on State street, next north of Sherman's land, passed, by a decree of court, to his widow, Eliza Garrett. Eliza Garrett died in 1855, or early in 1856, and by her will her executors were clothed with power to sell and convey real estate of the testatrix.

In March, 1856, the executors of Eliza Garrett, for the purposes of sale, made a plat, intended to cover this Garrett tract of 267 feet lying next north of Sherman's land. By that time many parts of the fence of the inclosure made by Augustus Garrett were broken down and gone, but the fence on the south side, though considerably dilapidated, was still there, and the land from this fence to the north was em-

braced in the plat, and divided into eleven lots, fronting on State street, each extending east to an alley. Lots 1 to 10, inclusive, numbering south from the north of the plat, were laid off 24 feet wide, and lot 11, the most southerly lot, was laid off 27 feet wide, its south line being the fence spoken of. There were no monuments marked upon the plat by which the exact location of the ground, as to its north and south lines, could be ascertained; but witnesses who attended the sale say the marks of the surveyor were still there, and the ground was platted as far south as the fence, the fence being on the south line.

The lots were sold in March, 1856, at a public sale, and Charles Ferren bought lots 10 and 11, at $5100, and received a contract from the executors, by which they contracted to sell the same to him. The description in the contract was: "Commencing at a point on State street 216 feet south of the north-west corner of the land belonging to the estate of said Eliza Garrett, deceased,—which adjoins the land formerly belonging to Mrs. Ann Seaman, of New York,—running south 51 feet, thence east 170 feet, thence north 51 feet, thence west 170 feet to the place of beginning, known in a certain plat or subdivision of said property, now in possession of said parties of the first part, as lots 10 and 11, in block 1." This plat or subdivision was recorded November 14, 1856. This contract was, on November 27, 1856, assigned by Ferren to Stevens, one of appellants, and was filed for record November 28, 1856, and on May 2, 1859, Stevens paid in full the purchase money. Stevens, in 1859, sold to Kate Howard lot 10, and one foot off the north side of lot 11, and she, in 1859, built a brick house upon the property, 25 feet front, on State street. This left 26 feet between the south line of her house and the line of the fence on the south line of the six feet in controversy. On April 5, 1860, the executors who had made this sale, executed a deed to Stevens, by which they conveyed, or professed to convey, the same property to

him, and by the very same description used in the contract of Ferren. In October, 1861, Stevens took possession of the 26 feet next south of the Howard property, and built a house upon it, and by himself and his tenants has been in the actual possession of the same ever since. This action was brought October 26, 1880.

On the trial, defendants proved, by the production of tax receipts, the payment of taxes on the south 26 feet of lot 11, Garrett's subdivision, etc., for the year 1861, on May 5, 1862; for the year 1862, on May 7, 1863; for the year 1863, on May 19, 1864; for the year 1864, on December 14, 1864; for the year 1865, on May 1, 1866; for the year 1866, on May 6, 1867; for the year 1867, on June 4, 1868; for the year 1868, on June 12, 1869; and also tax receipts from 1868 to 1879, except for the years 1869 and 1870.

On the trial, plaintiff, Sherman, testified as follows:

Q. "Have you paid the taxes on these premises that were conveyed to you by Mr. Garrett?

A. "Yes, sir. I paid them generally by my agent. Jonas M. Small paid the taxes for me for the last eighteen or twenty years. He is dead. I have not possession of all the tax receipts. During the years between 1858 up to 1868, I sometimes paid the taxes, and sometimes Mr. Small paid them. My property was never sold for taxes upon my description, which was a part of the Gurley subdivision."

Plaintiff produced tax receipts showing payment of the taxes for 1872, paid April 1, 1873; taxes for 1875, paid September 28, 1876; taxes for 1876, paid September 5, 1877.

This is the substance of all the evidence bearing upon the questions discussed in the opinion, save what is therein stated.

Mr. CHAS. H. WOOD, for thé appellants:

Under the facts in this case, defendant Stevens purchased by the plat, and the south line of the plat of Garrett's subdivision was the south line of his land. *McCormick* v. *Huse,*

78 Ill. 363; *Everett* v. *Boardman,* 58 id. 429; *Ambrose* v. *Raley,* id. 506; *Canal Trustees* v. *Havens,* 11 id. 554.

A constructive adverse possession will extend over the whole of the tract included in the color of title, though part be occupied. *Hinchman* v. *Whetstone,* 25 Ill. 185; *Jackson* v. *Camp,* 1 Cow. 605; *Munro* v. *Merchant,* 28 N. Y. 9; *Turney* v. *Chamberlain,* 15 Ill. 271.

This case is analogous to, and should be governed by, the following cases: *Hubbard* v. *Stearns,* 86 Ill. 35; *Bauer* v. *Gottmanhausen,* 65 id. 499; *Weber* v. *Anderson,* 73 id. 439; *Schneider* v. *Botsch,* 90 id. 577.

Where owners of adjoining lands build a fence between them upon the assumed boundary line, and each holds and occupies up to it, on his own side, claiming it as the true line, their possession is adverse, and will ripen into a valid title. *Burrell* v. *Burrell,* 11 Mass. 297; *Stuyvesant* v. *Tompkins,* 9 Johns. 62; *Jones* v. *Smith,* 64 N. Y. 180.

The only exclusive effect of what is called "color of title," in connection with adverse possession, is to define the extent of the possession claimed. Sedgwick & Waite on Trial of Title to Land, sec. 761.

Color of title is defined to be that which in appearance is title, but which in reality is no title. *Wright* v. *Matteson,* 18 How. 56; and see, generally, what is color of title,—*Baker* v. *Swan,* 32 Md. 355; *Coleman* v. *Billings,* 89 Ill. 190; *Kruse* v. *Wilson,* 79 id. 240; *Woodward* v. *Blanchard,* 16 id. 430; *Chandler* v. *Spear,* 22 Vt. 405; *Gittens* v. *Lowry,* 15 Ga. 338; Sedgwick & Waite on Trial of Title to Land, sec. 762.

The contract and deed to Stevens both refer, on their face, to the plat of the Garrett subdivision.

Where a plat or map is referred to in a deed, it becomes, for the purpose of identifying the land, as much a part of the deed itself as if incorporated into it. *Seaward* v. *Nalotte,* 15 Cal. 306; *Vance* v. *Fore,* 24 id. 436; *Davis* v. *Rainsford,* 17 Mass. 207; *Lincoln* v. *Wilder,* 29 Maine, 179.

Messrs. ROSENTHAL & PENCE, for the appellee:

Neither the twenty years' Statute of Limitations, nor the statute of 1835 or 1839, has been pleaded, hence no defence can be made under those statutes. *Borders* v. *Murphy*, 78 Ill. 81.

The nature of that adverse possession which is required to constitute a bar to the assertion of a legal title by the owner of it, or by one against whom the adverse occupant brings ejectment, must be actual, visible, notorious, distinct and hostile possession. Tyler on Ejectment, 900; 2 Smith's Leading Cases, *561, 566; *Calhoun* v. *Cook*, 9 Pa. 226; *Turney* v. *Chamberlain*, 15 Ill. 271.

In this case when here before, (101 Ill. 487,) this court said: "Adverse possession sufficient to defeat the legal title must be hostile in its character, and continue uninterruptedly for twenty years. (*Turney* v. *Chamberlain*, 15 Ill. 271; *Ambrose* v. *Raley*, 58 id. 506.) It is not claimed for defendants that either of them was in possession of this six feet for more than nineteen years."

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The deed from the executors of the estate of Eliza Garrett, to Stevens, we think was color of title. Monuments always prevail over distances. This deed purported to convey to Stevens lots 10 and 11, in the Garrett subdivision. These lots, by the plat and stakes, covered the 51 feet next north of this fence, and embraced the land in controversy. It is true the deed says the north-west corner is 216 feet south of the north-west corner of the Garrett tract, when the north-west corner of this 51 feet was, in fact, 222 feet south of the Garrett tract, by the description in the deeds to the property lying next north, but whether more than 216 feet south of the inclosure, does not appear. It is not a question of accuracy of measurement. The question is, what land did this deed purport or profess to convey.

Color of title is said to be that which in appearance is a
title, but which in reality is not. (*Wright* v. *Matteson,* 18
How. 56.) It must apparently transfer title to the holder,—
must profess to convey a title. (*Coleman* v. *Billings,* 89 Ill.
183.) It must apparently convey title. (79 Ill. 241.) The
intent of the parties as to boundaries, as gathered from the
language employed, will be effectual, (Tyler on Boundaries,
132,) and the surroundings under which the language was
used may be considered to give construction to the words.
That part of a description which the parties must be sup-
posed most fully to understand, will triumph. (*Lincoln* v.
*Wilder,* 29 Maine, 169.) The fence, and surveyor's marks
upon the ground, were, in themselves, facts. The statement
of distance from the north-west corner of the Garrett tract
was an attempt to describe a fact. 11 Ill. 554.

This case was before this court at a former term. (101 Ill.
483.) In passing upon the evidence given at a former trial,
this deed was there treated as color of title, although it was
held not to be color of title *of record,* because the stakes and
the fence did not appear of record. Stevens, then, entered
under color of title, and paid all taxes upon this land for seven
consecutive years, the last payment being made June 12,
1869, as is shown by the tax receipts, fixing the date of the
payment for each year. There can be no doubt as to his good
faith, for no claim was made by Sherman to land north of
the line of the old fence, until after 1869. This makes a
*prima facie* case for the appellants. To rebut this, Sherman
testifies, generally, and in answer to a leading question, that
he, by himself or his agent, paid the taxes upon this same
land for each of those years. He fails to show either the
amount or the date of any of these payments. He produces
no receipts for the taxes of those years, and no adequate
reason for their non-production. He swears he has not all
of his tax receipts in his possession, and that the agent who
paid part of the taxes is dead. He does not show these tax

receipts are lost or destroyed. The *prima facie* case of appellants must stand, unless appellee shows that the taxes on this land, for some one of these years, were paid *before* appellants made such payments.

It is insisted that this court, in its opinion in this case when it was here before, held otherwise. At the first trial, counsel for appellants admitted, for the purposes of that trial, that appellee had paid all taxes for these years, and undertook to overcome that admission by proving that appellants had also paid taxes for the same years, but failed to show which payments for the same year were made first. We said, this admission must defeat appellants, in this regard, unless it was shown that appellants paid, each and every year, before the payment made by appellee. The defendants having admitted, on that trial, that plaintiff had paid *the taxes* for certain given years, may well be taken to be an admission that no one had paid the taxes before such payment by plaintiff, for if the same taxes had been paid already by another there would be no taxes to pay, and hence the admission itself, in the terms in that record, repelled the idea of a former payment by defendants. The case before us now contains no such admission. On the contrary, on this trial the appellants made a *prima facie* defence, by proving payment of taxes, and the date of each payment. To overcome this case so made, the burden was cast upon appellee to prove payment of taxes for the same years, before the payment by appellants. Testimony that he had paid taxes for the same years does not affect the appellants, unless it be shown the taxes for some one of these years were paid by appellee *before* the date of appellants' payment for the same year.

We think the defence was well sustained on the second trial. The judgment is therefore reversed, and the cause remanded.

*Judgment reversed.*