GEORGE H. WHITE

*v.*

SARAH E. HARRIS *et al.*

*Opinion filed December 16, 1903—Rehearing denied February 3, 1904.*

1. LIMITATIONS—*what must be proven to sustain title under section 7 of Limitation act.* A plaintiff in ejectment who relies upon section 7 of the Limitation act must not only prove color of title and payment of taxes for seven successive years while the premises were vacant and unoccupied, but also that he took possession after the lapse of the seven years.

2. SAME—*payment of taxes and color of title must concur.* Under section 7 of Limitation act, relating to vacant land, the taxes must be paid by the claimant for seven successive years after acquiring color of title, and hence a payment made before acquiring color of title cannot be counted as the first payment.

3. SAME—*effect where possession is taken before the lapse of seven years.* Taking possession of land before taxes have been paid thereon seven successive years as vacant and unoccupied property, precludes the acquiring of title under section 7 of the Limitation act.

4. SAME—*part performance under different sections of the Limitation act is unavailing.* Title to land under the Limitation act cannot be established by proving part performance under section 6 and part performance under section 7 of the act.

5. SAME—*survey of land does not establish possession.* The survey of unenclosed land, and the placing of stones at the boundary corners, is not such a taking of possession as is contemplated by section 7 of the Limitation act.

6. SAME—*effect of appointment of agent to prevent cutting of timber.* Appointment of an agent to keep persons from cutting timber on swamp land, used by the public, generally, for pasturage and other purposes, who is to receive for his services such timber as he desired to cut and pasturage for his cattle, does not constitute possession.

7. SAME—*no presumption is indulged in favor of holder of color of title.* Since a claim of title by adverse possession is in derogation of the right of the true owner, no presumption will be indulged to aid the adverse claimant in making his proof of possession.

8. SAME—*what does not establish payment of taxes for seven successive years.* Proof of the payment, by the plaintiff in ejectment, of the taxes on vacant property for the seven successive years next preceding the erection of a hut or hunting shack upon the land, is not established where it appears the defendant paid the taxes for two of such years before they were paid by the plaintiff.

9. SAME—*whether erection of hunting shack constitutes possession is for the jury.* Whether the erection of a hunting shack upon land is such

a taking of possession as is contemplated by section 7 of the Limitation act is a question for the jury under the particular circumstances of the case and under proper instructions by the court.

10. INSTRUCTIONS—*when an instruction as to possession is erroneous.* An instruction in an action of ejectment which authorizes the jury, in determining the question of possession by the plaintiff under section 7 of the Limitation act, to consider alleged acts of possession occurring before the taxes had been paid for seven successive years, is erroneous.

WRIT OF ERROR to the Circuit Court of Greene county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This is an action of ejectment, brought on August 23, 1895, in the circuit court of Greene county by Sarah E. Harris, widow, and Mary J. Dunaway and others, heirs-at-law of John Harris, deceased, as plaintiffs, against the plaintiff in error, White, and his two tenants, as defendants, to recover possession of two hundred acres of land in Greene county, described as the north-east quarter and the north-east quarter of the south-east quarter of section 31, town 10, north range 13, west. The plea of not guilty was filed. The cause was tried before the court, and a jury. The jury found the plaintiffs below, defendants in error here, to be the owners in fee simple, and entitled to the possession of the real estate, described in the declaration, and found the defendants below guilty of withholding the premises. Motion for new trial was overruled, and on September 9, 1898, the court rendered judgment, that the plaintiffs recover against the defendants the possession of the premises according to the finding of the jury, and that they have a writ of possession therefor, etc. The present writ of error is sued out for the purpose of reviewing the judgment, so entered by the circuit court.

EDWARD BOYLE, and HENRY T. RAINEY, for plaintiff in error.

FRANK A. WHITESIDE, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the trial of this action of ejectment in the court below, the plaintiffs there, defendants in error here, did not claim to be the owners of the paramount, or government, title, but sought to recover under section 7 of the Limitation law in regard to vacant and unoccupied lands. (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2618.) Where a plaintiff in an action of ejectment relies for his right of recovery upon this section 7, he must not only prove that he had color of title, and that he paid taxes for seven successive years upon the premises, while they were vacant and unoccupied, but he must also prove that, after the lapse of the seven years, he took possession of the premises. (*Paullin* v. *Hale*, 40 Ill. 274; *Gage* v. *Hampton*, 127 id. 87; *McCauley* v. *Mahon*, 174 id. 384; *Travers* v. *McElvain*, 181 id. 385).

The defendants in error introduced in evidence, as color of title, a deed, dated November 18, 1867, and recorded November 20, 1867, executed by William J. Vandyke, as grantor, and conveying to John Harris, as grantee, the two hundred acres in question. The title of John Harris, and all those, under whom he held, was based upon a tax deed. John Harris died on May 17, 1888, intestate, and left the defendants in error, as his widow and heirs-at-law. It is claimed on the part of defendants in error, that John Harris in his lifetime paid all the taxes upon the two hundred acres in question, while the land was vacant and unoccupied, under the deed from Vandyke to himself as color of title, and that, after the lapse of the seven years, he took possession of the land. In order to prove the payment of taxes, the defendants in error introduced certain tax receipts to show the payment of taxes by John Harris in his lifetime for the years from 1867 to 1887 inclusive, and by his widow and heirs after his death for a number of years

subsequent to 1888, and including that year, but he did not pay them for the years 1890 and 1891. None of these tax receipts for the years from 1867 to 1875, inclusive, are dated, and do not show upon what dates the taxes for those years were paid. Defendants in error claim that the premises were vacant and unoccupied from 1867 to 1874 inclusive, and that, during those years, they paid all the taxes legally assessed upon the land. Their further contention is, that they took possession of the land in 1874, or in 1882. The evidence and the arguments leave it somewhat in doubt, whether the claim is that one possession was taken in 1874 and another in 1882, or whether there was a continuous possession from 1874 to 1882.

The proof shows conclusively, that the land in question was swamp land, and liable to overflow. It did overflow very often, generally in the spring, and sometimes was under water to the depth of from eight to fifteen feet. There was also much timber upon the land. Three circumstances are relied upon by defendants in error as acts of possession. The first is, that in 1874 John Harris had the two hundred acres of land surveyed, and put stones at the corners of the quarter sections. The second circumstance is that, after he obtained his deed, John Harris employed a farmer, named Bushnell, whose farm adjoined the land in question, to act as his agent; and his duty as agent was to keep people from cutting the pin-oak timber upon the land. Bushnell was to have the privilege of cutting the ash timber upon the land, and of pasturing his cattle upon it. Bushnell states in one part of his testimony that he went upon the land about once a month, and, in another part thereof, that he went upon the land about once a week. There is some testimony, tending to show that at different times Bushnell stopped or prevented certain persons from cutting timber upon the land, but there is much testimony, also tending to show that the land was used by the public, and

the people living in the neighborhood for the purposes of fishing, hunting, cutting timber, and pasturing their cattle. Whatever acts were done by Bushnell were occasional and done at long intervals. Bushnell testifies that he acted as agent for the party, having a deed to the land, before John Harris obtained his deed. Vandyke, the grantor of Harris, obtained his deed from one Jenks on September 16, 1867. Bushnell further testifies that thereafter he acted, as agent for Harris, in the manner already stated, for some ten or eleven years. It is somewhat uncertain from the testimony, and from the statements of counsel in their argument, whether the agency of Bushnell was for ten or eleven years after 1867, or ten or eleven years after 1874. The third circumstance, relied upon by defendants in error as showing possession by John Harris, is that a hut or shanty, or, as some of the witnesses call it, a hunting shack, was erected upon the two hundred acres about September 1, 1882. The proof tends to show, that Harris, who at that time lived at Carrollton, some fourteen miles from the land, gave $10.00 to one Withers, an attorney, and authorized Withers to cause the erection of the house in question upon the premises. Withers employed a man, named Goans, to erect the house or shanty, and paid the latter the $10.00 for doing so. This house or shanty is described as being about ten by twelve feet, and about five or six feet high. It was built of logs, and the spaces between the logs were filled with mud. The roof was of clapboards and sloped one way. It had no windows and no floor. After Goans built it, he and several others, who helped him to build it, stayed there to hunt ducks for several days. Goans testifies that he stayed there a week or two weeks, he could not remember which, and then chained the door, and left the premises. The proof also shows that, in the spring of 1883, the shanty or house was washed away by the water, and was never re-built, nor was any other structure erected in its place.

Even if the survey of the land and the placing of the stone monuments at the corners of the quarter section were such acts of possession, as the law required after the payment of taxes for seven successive years on vacant and unoccupied land under the terms of section 7, yet the defendants in error can derive no benefit therefrom under the facts of this case. There is nothing in the evidence to show when John Harris made the first payment of taxes upon the two hundred acres. The receipt, which purports to show a payment of taxes for the year 1867, is not dated. The deed, however, from Vandyke to Harris, which is relied upon as color, was dated November 18, 1867. The survey of the land and the placing of the stone monuments took place on the 6th day of November, 1874. The certificate of the surveyor to the plat of the survey, as well as the testimony of the witnesses, shows that the date of the survey was November 6, 1874. There were not seven successive years between November 18, 1867, and November 6, 1874. The first payment of taxes was required to be under the color of title, and the color of title was dated November 18, 1867. Therefore, the first payment of taxes must have been subsequent to November 18, 1867. In *McConnell* v. *Konepel*, 46 Ill. 519, we said: "The settled construction of the Limitation law of 1839 is, not that seven years must elapse between the date of the first payment of taxes and the date of the last payment, but that all the taxes must be paid for seven successive years, and that seven years must elapse from the date of the first payment, when the statute begins to run, before the commencement of the suit, or possession taken of the land, where the bar is claimed under the ninth (or seventh) section." (See also *Lyman* v. *Smilie*, 87 Ill. 259; *Burton* v. *Perry*, 146 id. 71; *Converse* v. *Dunn*, 166 id. 25; *Whitney* v. *Stevens*, 89 id. 53; *Duck Island Club* v. *Bexstead*, 174 id. 435; *Holbrook* v. *Debo*, 99 id. 372.) Under section 7 the first payment of taxes is the payment, from which the time of limitation

begins to run, and must be made after the acquisition of the claim and color of title, and the taxes must be paid by the claimant for a period of seven successive years; otherwise he is not entitled to the benefit of the statutory limitation. In other words, the payment of taxes and color of title must concur. (*Stearns* v. *Gittings*, 23 Ill. 332.) The language of the section is: "Whenever a person having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven successive years," etc. It is the person, having the color of title, who must pay the taxes. A payment, made before the color of title is acquired, cannot be regarded as the first payment under this section. (*Stearns* v. *Gittings, supra*).

Inasmuch, therefore, as the first payment made by John Harris could avail nothing, unless it was made after he acquired his color of title, it must have been made after November 18, 1867. As the survey was not made until November 6, 1874, a full period of seven successive years could not have elapsed before the act of possession, if the survey can be regarded as an act of possession. Upon the theory, upon which the case was tried, and upon which instructions were asked by the defendants in error in the trial court, the payment of taxes for seven successive years, while the land was vacant and unoccupied, was not made by the ancestor of defendants in error before possession was taken, if the survey and the erection of the stone monuments be regarded as acts of possession.

The same, or a similar, difficulty exists in regard to the agency of Bushnell, and his acts in pursuance of that agency, in so far as the same may be regarded as possession. If Bushnell was appointed agent in 1867, as the proof tends to show, and acted as such for the ten years following, then the land was not vacant and unoccupied from 1867 to 1874, but was in possession of John Harris through his agent, if his acts as agent constituted pos-

session. If the agency began when the survey was made on the 6th of November, 1874, then, as an act of possession, it took place before the expiration of the seven years during which taxes were paid upon the land as vacant and unoccupied land.

To constitute a bar to an action of ejectment, the party must show complete performance under either one or the other of the sections of the Limitation law of 1839, that is to say, either under section 6, relating to possession for seven years, or section 7, relating to the payment of taxes upon vacant and unoccupied land for seven years. It will not be permitted to show part performance under one section, and part under another, and thus avail of the provisions of both. (*Whitney* v. *Stevens*, 89 Ill. 53; *Iberg* v. *Webb*, 96 id. 415; *Duck Island Club* v. *Bexstead, supra*).

We are of the opinion, however, that the survey made by John Harris, and the appointment of Bushnell as his agent and the acts of Bushnell in pursuance of the agency, did not constitute such possession as the law requires. A mere survey of land is not sufficient to establish possession. (*Thompson* v. *Burhans*, 61 N. Y. 52). "Adverse possession of unenclosed, uncultivated, unimproved, and unoccupied land is not shown by evidence, that one had it surveyed and its boundaries marked by monuments, paid taxes on it for a few years, and from time to time cut trees on it for use on other land." (*Mission of Immaculate Virgin* v. *Cronin*, 38 N. E. Rep. 964; 143 N. Y. 524).

Where an agent is appointed to keep other persons from cutting timber, and is to receive for his services such timber as he wants for his own use, such appointment is not sufficient to constitute possession. (*Travers* v. *McElvain*, 181 Ill. 385; *Stalford* v. *Goldring*, 197 id. 156). An arrangement with a neighboring farmer to look after land, with permission to pasture cattle thereon and to authorize others to cut grass thereon, is not sufficient proof to divest title to the land by adverse possession.

(*Judson* v. *Duffy*, 96 Mich. 255). Where land is used and enjoyed in common with others, or with the public in general, it cannot be regarded as held by a possession, which is hostile to other persons claiming title. The act of possession must be of such a character, as in its nature is calculated to arouse the attention, and put any other person, claiming title, upon inquiry. The use, to which the land is devoted, must be such as to apprise the community or neighborhood, that it is in the exclusive use or enjoyment of the person so appropriating it. (*Travers* v. *McElvain, supra*). The evidence tends to show in the present case, that this land was used for pasturage, and for the cutting of timber, and for other purposes by the public generally. Entries upon land, which are merely temporary, such as camping thereon, or leaving a chattel thereon, or occasionally building a haystack thereon, do not constitute actual possession, so as to change the character of vacant land to that of land actually possessed or occupied. (*Taylor* v. *Wright*, 121 Ill. 455; *Walker* v. *Converse*, 148 id. 622; *Drake* v. *Ogden*, 128 id. 603; *Truesdale* v. *Ford*, 37 id. 210).

"A party, claiming title by adverse possession, always claims in derogation of the right of the real owner. He admits that the legal title is in another. He rests his claim not upon a title in himself, as the true owner, but upon holding adversely to the true owner for the period prescribed by the Statute of Limitations. Claiming a benefit from his own wrong, his acts are to be construed strictly." (*Cornelius* v. *Giberson*, 25 N. J. L. 31). "Adverse possession cannot be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be strict, clear, positive and unequivocal." (*Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430.) The rule is, that every presumption will be made in favor of the holder of the legal title, and no presumption will be made in favor of the holder of color of title only. (*Kurz* v. *Miller*, 89 Wis. 426).

The only remaining act of possession, relied upon by defendants in error, is the erection of the hut or shanty upon the premises in September, 1882. The evidence shows, that the plaintiff in error, White, paid the taxes for the year 1879 before the taxes of that year were paid by John Harris. It also shows that White paid the taxes of 1880 before the taxes of that year were paid by John Harris. White paid the taxes for the year 1879 on February 26, 1880, while Harris paid them on March 9, 1880, as is shown by the receipts introduced. White paid the taxes for the year 1880 on February 16, 1881, while Harris paid the taxes for 1880 on March 31, 1881, as is shown by the tax receipts introduced in evidence. It follows that the defendants in error cannot rely upon the payment of taxes upon the land as vacant and unoccupied land for the seven successive years next preceding the erection of the house in 1882. "Where a party having color of title shows the payment of all taxes on the premises for seven successive years by the production of his tax receipts, showing the date of each payment and the amount thereof, this makes out a *prima facie* defense under the Limitation law of 1839, which must prevail, unless the plaintiff shows that the taxes for some one of the seven years were paid before the defendant made his payment." (*Bolden* v. *Sherman*, 110 Ill. 418; *Osburn* v. *Searles*, 156 id. 88; *Stearns* v. *Gittings, supra*). The evidence shows that some correspondence passed between Harris and White, the latter claiming to be the owner of the paramount title, in April, 1880, wherein White proposed to pay Harris $50.00 for a quit-claim deed, White contending that the tax deed, under which Harris held, was defective and could be set aside. The question arises whether the erection of the shanty in 1882 was such a possession, as is required after the payment of taxes for seven successive years under section 7 of the Limitation law. "What acts may or may not constitute a possession, are necessarily varied, and depend to some extent upon the nature, local-

206—38

ity and use to which the property may be applied, the situation of the parties, and a variety of circumstances necessarily have to be taken into consideration in determining the question. They must necessarily be left to the jury, whose peculiar province it is, to pass upon the question of possession." (*Morrison* v. *Kelly*, 22 Ill. 609; *Ewing* v. *Burnett*, 11 Pet. 53).

The evidence tends to show, that the hut, which was erected upon the premises in 1882, was, as has already been stated, of an inferior character. The evidence of the plaintiff in error tends to show that it was constructed merely for a temporary purpose, and was what is known as a hunting shack. The man, who built it, testifies that he was paid to erect it, and not to occupy it; that he used it for no other purpose than for hunting; and one of the men, who aided in the construction of it, testified that he supposed it was to be used only by those engaged in hunting. Another witness testifies that it was supposed to have been constructed for the use of men, engaged temporarily in cutting timber, and who wanted some shelter when they ate their lunch. The testimony, however, of Withers was that Goans was to occupy, as well as build, the house. An individual cannot, under claim and color of title, by some trifling improvement appropriate to himself a large and unusual body of land, or maintain an actual possession by entering upon a tract of land, and doing some useless thing thereon, as erecting a pen, or sham building, or leaving a few rails or timbers thereon, with the intention thereby of excluding others, and not of permanently improving and using the land. A party will be protected in his possession, who enters upon a tract of land under claim and color of right, and commences to improve the same with the intention of completing the improvement for actual use while that intention continues, and for a reasonable time for convenient use by cultivation or otherwise. (*Brooks* v. *Bruyn*, 18 Ill. 539; *Brooks* v. *Bruyn*, 24 id. 373; see also *Scott* v.

*Bassett,* 186 id. 98; *Stalford* v. *Goldring, supra*). The evidence in the present case shows that the land was not enclosed by a fence or otherwise, or put under cultivation, until 1893 when plaintiff in error took possession of the same, and enclosed the land by a fence, and erected buildings and built ditches thereon. The erection of a temporary structure is no such occupation as will establish title by adverse possession. (*Royal* v. *Lisle,* 15 Ga. 545). Mere occupation of a shanty by a party, who is engaged in removing timber, is not a *bona fide* and actual possession. (*McKinnon* v. *Meston,* 104 Mich. 642).

If the shanty or house in question was sufficient to notify the public, and the owner of the paramount title, that there was an intention to take permanent possession of the land, then the extent of the possession would be fixed by the boundaries in the deed. Where a man enters into possession of premises under a deed, which specifies certain boundaries, and occupies by residence or otherwise a part of the premises, he will be held to be in constructive possession of the balance by virtue of his deed. (*Harms* v. *Kransz,* 167 Ill. 421; *Morrison* v. *Kelly,* 22 id. 609.) It was, therefore, a matter for the jury to determine, under the instructions of the court, whether the erection of this house upon the land, under the circumstances already stated, constituted possession or not. Accordingly, the trial court, at the request of plaintiff in error, instructed the jury that, if it appeared from the evidence that the witness, Goans, was simply instructed to build, and did build a sham house on the premises for the purpose only of enabling plaintiffs to claim that they were in possession of said premises, the building of said sham house alone does not constitute that possession in good faith, which the law requires. But the court instructed the jury, in behalf of the defendants in error, "that if the possession by John Harris of the land in controversy was all that could well be had of land of that character, and if his appropriation was such as to ap-

prise the community in the immediate vicinity that the land was in his possession, it is sufficient; such appropriation may be shown by evidence of such acts as cutting timber for sale, surveying and establishing monuments, building a house thereon, or any other acts of ownership, sufficient to indicate to the community that he claims the exclusive possession of the land." We are of the opinion that this instruction was calculated to mislead the jury. They may have found under the instruction, given for the plaintiff in error, as above stated, that the house, constructed upon the premises was a sham house; but even if they did so find, they may also have found, under the instruction given for the defendants in error, that the latter were in possession of the premises by reason of the cutting of timber and the survey and erection of stone monuments. It was error to authorize the jury to take into consideration the survey, and the erection of the stone monuments and the cutting of timber as acts of possession, because, even if under other circumstances those acts could be regarded as possession, they could not be so regarded under the circumstances of this case, in view of the fact that they occurred before the period of seven years, during which the taxes were paid, had expired. In other words, under the facts shown by the present record, the attention of the jury should have been directed only to the question whether the erection of the shanty in question was or was not possession, and not to the question whether the survey and the erection of the stone monuments and the cutting of timber constituted possession.

For the errors indicated, the judgment of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.                    *Reversed and remanded.*