WILLIAM O. TOWLE, Defendant in Error, *vs.* CORA QUANTE, Plaintiff in Error.

*Opinion filed October 28, 1910.*

1. CLOUD ON TITLE—*what is sufficient proof of title.* In a proceeding to set aside a tax deed as a cloud on title, evidence that the complainant, at the time the bill was filed, was in possession of the property as alleged in the bill, claiming in good faith to be the owner thereof under a deed purporting to convey the same to him, is sufficient proof of title.

2. SAME—*presumption as to possession is in favor of holder of legal title.* In a proceeding to set aside a tax deed as a cloud on title every presumption will be made in favor of the holder of the legal title, and as against him no presumption will be indulged in favor of the holder of color of title.

3. SAME—*when a defendant is estopped to deny a complainant's title—privity.* One who inherits land purchased from the assignee of a tax deed is so in privity with the holder of the certificate of purchase who made the affidavit for the tax deed that she is bound by such person's statement in the affidavit with reference to the ownership of the land, and is estopped to deny such statement when the party named thereby as owner files a bill to set aside the tax deed and the conveyances based thereon.

4. SAME—*what constitutes possession depends upon circumstances.* To constitute possession there must be such appropriation of the land as will apprise the community in the vicinity that

the land is occupied and who the occupant is, but the question as to what acts establish such possession depends in a measure upon the nature and locality of the property, the use to which it is adapted and the situation of the parties.

5. SAME—*question of possession is determined as of time bill was filed.* In a proceeding to remove a tax deed as a cloud on title the question of the complainant's possession of the land is determined as of the time the bill was filed, and his acts subsequent to that time have no bearing on the matter.

6. SAME—*prior possession by holder of legal title will be protected.* If the holder of the legal title goes into possession of the land before the holder of color of title, who has paid seven years' taxes thereon as vacant land, the possession of the holder of the legal title will be protected, unless there is clear proof that he was actually ousted of his possession before he filed his bill to remove cloud from title.

7. SAME—*where two are in possession the seizin follows title.* Where there is joint possession by two persons, even though their claims are adverse, the seizin follows the title, and there is no disseizin of the holder of the legal title unless he is altogether deprived of his possession by the other.

8. SAME—*land need not be entirely fenced to establish possession.* The fact that in the wire fence erected by the holder of the legal title around the land, gaps are left for a roadway and between the edges of certain ponds, does not prevent his acts in cutting the paths for the surveyors, running the lines and putting up the wires from constituting the taking of possession.

9. SAME—*when holder of legal title is in possession.* Where the holder of the legal title goes upon vacant land with surveyors and erects posts and wires except across certain ponds, where gaps are left, his possession is established notwithstanding the holder of color of title, before the fence is finished, also strings wires on the same posts and across the ponds, there being no surrender by the holder of the legal title of his prior possession. (*LeSourd* v. *Edwards,* 236 Ill. 169, followed.)

WRIT OF ERROR to the Circuit Court of Massac county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

FRED R. YOUNG, for plaintiff in error.

JAMES C. COURTNEY, and C. L. V. MULKEY, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendant in error, William O. Towle, filed his bill in the circuit court of Massac county on May 25, 1909, to remove a tax deed, and subsequent conveyances based thereon, as clouds upon the title to the south-west quarter of section 24, township 16, south of range 6, east, in said county, which he claims to own by virtue of a warranty deed obtained from C. L. Clanahan in 1890, followed by possession. Plaintiff in error, Cora Quante, claims said land by virtue of said tax deed, and the conveyances based thereon, and seven years' payment of taxes. On a hearing the circuit court entered a decree in favor of defendant in error, directing, however, that he re-pay the taxes theretofore paid by plaintiff in error, with interest. This writ of error is sued out to review that decree.

The evidence introduced shows substantially the following state of facts: After defendant in error had purchased said land from Clanahan he entered into possession under said deed, claiming to be the owner in fee simple. He was at that time interested in certain enterprises in Metropolis, Massac county, including the operation of a saw-mill. Soon after taking possession of the land he hired some men to cut timber therefrom for this saw-mill. He caused to be built on the land two shanties for them to live in and pens for the oxen that were used in hauling the timber. About twenty men, with twenty yoke of oxen, were engaged in cutting and hauling timber on the land for some four years. In 1894 a bank in Metropolis in which he was interested failed, and being financially embarrassed he discontinued all his business, including the cutting of timber on this land, and went west to better his fortune, leaving his homestead and all his property for his creditors to take if they chose and giving no further attention to this land until in 1909, when he returned, and on investigating the records found that it had not been transferred to any of his creditors. It

had, however, been sold for taxes to C. L. Clanahan in 1895, and on September 2, 1897, Clanahan had assigned his certificate of purchase to one Noah Critchlow, who the same day received from the county clerk a tax deed for the land and on the same day conveyed the land to Clanahan. The latter sold the quarter section in 1898 to Hiram Quante and August Quante. Later Hiram Quante died and his land was partitioned among his heirs, the land in question being allotted in severalty to plaintiff in error, Cora Quante, who was one of said heirs. On May 18, 1909, defendant in error, with a surveyor and several laborers, went upon the land and started to survey it, cutting out underbrush so as to make a path for the party. Trees were blazed and posts set at intervals, the survey being completed May 20. They then commenced running wire fences, and by about three o'clock on May 21 had placed two wires along the entire north side, one wire along the entire east side, (with the exception of certain ponds, which they waded into and wired as far as they could go with gum boots,) two wires along the entire south side (to within a few feet of the corner) and about a quarter of a mile of wire on the west side. At this time August Quante, representing the plaintiff in error, came to the land with a gang of men under the leadership of Thomas King. Quante told Towle that he had heard that he (Towle) was fencing the property, and that it belonged to the plaintiff in error. Towle answered that that question would have to be settled in court. Quante's men, under the direction of King, immediately started wiring the land, following the line laid down by the defendant in error's surveyor and fastening their wire to the posts already used, sometimes over defendant in error's wire and sometimes under it. When the men working for plaintiff in error came to the deeper water of the ponds they stripped off their clothing and carried the wire across, using a boat in one instance. Defendant in error finished wiring the land some time on May 21, except across the

ponds and except two openings for a wagon road, which he was requested to leave open for a week in order that timber might be hauled. He afterward found that he had placed the wire on the east side about seventy-five feet too far east, and on May 24 he changed the wire on that side to the correct line. On that same date plaintiff in error's party was putting up wire on the east side on the same erroneous line first used by defendant in error. They also changed their wire to the correct line a day or two later. The last of May or first of June some men acting for the plaintiff in error went onto the land and cleared off some underbrush, prepared the ground and planted about three acres of corn, which they cultivated during that year. In putting up the fence around the land and planting and cultivating this corn the men acting for plaintiff in error did not attempt to take down or disturb the fence placed around the land by defendant in error but lifted up the wire to pass under it in order to reach the corn field.

We think it is clear from this record that at no time from 1895, when the defendant in error went west, up to May 18, 1909, had anyone attempted to exercise the slightest actual dominion over this land. During all of those years it was vacant and unoccupied. No contention is made by plaintiff in error in her brief that the tax deed under which she claims is paramount title or that the tax sale was valid. The only claim made is that this tax deed is good color of title under the Statute of Limitations, and that having paid all the taxes under this color of title for more than seven successive years while the land was vacant, and afterwards having taken possession of the land between May 21 and May 25, 1905, she thereby perfected her title.

It is first contended by plaintiff in error that as her answer denied title in defendant in error it was incumbent upon him to show title to the land before he could recover. In a suit to set aside a tax deed as a cloud on the title,

proof that the complainant, at the time the bill was filed, was in possession of the property, claiming in good faith to be the owner thereof under a deed conveying the same to him, is sufficient proof of the title. (*Glos* v. *McKerlie,* 212 Ill. 632; *Glos* v. *Gleason,* 209 id. 517; *McCraney* v. *Glos,* 222 id. 628; *Glos* v. *Ptacek,* 226 id. 188.) If, therefore, the proof shows that the defendant in error was in possession at the time his bill was filed herein he has made sufficient proof of title to support the decree in this cause. Moreover, there is a further reason why plaintiff in error cannot raise the question of title as against defendant in error. Noah Critchlow, who obtained the tax deed under which plaintiff in error claims, made an affidavit to obtain the tax deed, in which he swore that defendant in error was the owner of the land. Critchlow is estopped by this affidavit from questioning the ownership of defendant in error. *Hughes* v. *Carne,* 135 Ill. 519.

It is claimed on the one hand and denied on the other, that there is such privity between Critchlow and plaintiff in error as to preclude her from raising this question. "The term *privity* denotes mutual or successive relationship to the same rights of property." (1 Greenleaf on Evidence,— 15th ed.—sec. 189; *Union Nat. Bank* v. *International Bank,* 123 Ill. 510.) This relationship may be by operation of law, by descent, or by voluntary or involuntary transfer from one person to another. "All privies are in effect, if not in name, privies in estate. They are bound because they have succeeded to some estate or interest which was bound in the hands of its former owner." (Freeman on Judgments,—3d ed.—sec. 162; *Orthwein* v. *Thomas,* 127 Ill. 554.) Privies are estopped from litigating that which is conclusive upon him with whom they are in privity. (*Hunt* v. *Haven,* 52 N. H. 162; 32 Cyc. 393, and note; 6 Words and Phrases, p. 5607.) Plaintiff in error derived all of her title to this property by descent or purchase from Critchlow. There is such privity existing be-

tween them that whatever is binding upon Critchlow is binding upon plaintiff in error.

The bill alleges that defendant in error was in possession of the land in question at the time the bill was filed, and he contends that the proof introduced proves this allegation, while plaintiff in error insists that the proof does not show that defendant in error took actual possession of the land in question before it was fenced in by plaintiff in error. The rule is, that every presumption will be made in favor of the holder of the legal title, and as against him no presumption will be drawn in favor of the holder of color of title, only. (*White* v. *Harris,* 206 Ill. 584; *LeSourd* v. *Edwards,* 236 id. 169.) It is difficult, if not impossible, to specify what acts will constitute actual possession of land. Every case, in a measure, must rest upon its own facts. (*Brooks* v. *Bruyn,* 18 Ill. 539; *LeSourd* v. *Edwards, supra.*) To constitute possession there must be such appropriation of the land to the individual as will apprise the community in its vicinity that the land is in the exclusive use and enjoyment of such person. (*Morrison* v. *Kelly,* 22 Ill. 609.) Possession is considered as co-extensive with the claim of title. The acts and declarations of a person while in the occupation of a tract may be given in evidence to explain the character of his claim and possession. (*Davis* v. *Easley,* 13 Ill. 192.) Notice of possession of the premises, to be sufficient, must be of that open and visible character which from its nature is calculated to apprise the world that the land is occupied and who the occupant is. Such possession, if calculated to give notice of the fact, is all that the law requires. (*Truesdale* v. *Ford,* 37 Ill. 210.) The setting out of fish-traps on submerged lands and the blazing of trees to which the traps were attached by ropes was held by this court sufficient possession by the holder of the legal title as against the holder of the color of title, even though the ropes and traps themselves were beneath the surface of the water, which

covered not only the land in question but the surrounding land. (*LeSourd* v. *Edwards, supra.*) We have also held that the owner of the paramount title took possession, as against the holder of color of title, when he had the land surveyed, deadened about forty or fifty acres of timber, cleared about three acres, and posted eight or ten notices describing the land and warning all persons against trespassing. (*Mickey* v. *Barton,* 194 Ill. 446.) The acts that will be sufficient to prove possession depend to some extent upon the nature and locality of the property, the use to which it is adapted and the situation of the parties. The proof in this record shows conclusively that defendant in error took such possession of the land in question before the representatives of plaintiff in error came onto the land, as to apprise the people in that community that defendant in error claimed to be in possession and have title to the property. His conversation with the representatives of the plaintiff in error on May 21 clearly indicated that this was his contention, and it is evident that they understood that he claimed to be in possession of the land. To constitute such possession it was not necessary for him to have all the land fenced. (*Brooks* v. *Bruyn,* 24 Ill. 373; *McLean* v. *Farden,* 61 id. 106.) The failure to run his wires through the ponds did not defeat his taking possession of the entire quarter section. The cutting of the pathway for the surveyors, the running of the lines and putting up wires to the edges of the ponds clearly indicated the land of which he intended to take possession, as decisively as if he had run the wires through the ponds.

It is further contended that even if possession was taken by defendant in error he was disseized by the acts of plaintiff in error. If the holder of paramount title goes into possession of the property before the party who has color of title and who has paid taxes for seven successive years, the possession of the holder of the paramount title will be protected. (*McCagg* v. *Heacock,* 42 Ill. 153; *Mc-*

*Cauley* v. *Mahon,* 174 id. 384.) When plaintiff in error saw that the property had been reduced to possession by defendant in error she had no right to interfere with such possession and her entry was that of a wrongdoer. (*Gage* v. *Hampton,* 127 Ill. 87.) Disseizin by plaintiff in error and adverse possession as against defendant in error can not be made out by inference or implication. The proof to establish such disseizin must be strict, clear, positive and unequivocal. (*Kirby* v. *Kirby,* 236 Ill. 255; *White* v. *Harris, supra.*) Defendant in error must have been actually ousted of possession by plaintiff in error before the filing of the bill. A joint possession by two, even though the claim of each is adverse to the other, will not be a disseizin of one by the other. Where two are in possession the seizin follows the title, and there can be no disseizin unless the rightful owner is altogether deprived of possession. If he does not elect to abandon possession to the intruder the intrusion does not work a disseizin. (Tiedeman on Real Prop.—2d ed.—sec. 698; 1 Am. & Eng. Ency. of Law,—2d ed.—869, and cases cited; *Smith* v. *Burtis,* 6 Johns. 197.) The clearing of the ground and the planting and cultivating of the three acres of corn can have no bearing on the question of the possession and title at the time the bill was filed, for all this work was done by plaintiff in error after that date. The state of the title and possession at the beginning of the suit must control. (Hurd's Stat. 1909, sec. 50, p. 255; *Glos* v. *Davis,* 216 Ill. 532; *Converse* v. *Dunn,* 166 id. 25; *Mills* v. *Graves,* 44 id. 50.) This court held in *LeSourd* v. *Edwards, supra,* that the stretching of a barbed wire around the land in question by attaching it to trees and rails or posts about sixty feet apart, with signs bearing the name of the holder of the color of title, did not oust the holder of the paramount title, who had taken possession by placing fish-traps on the boundaries and blazing the trees, as heretofore stated. The

facts in the *LeSourd* v. *Edwards case, supra,* are so nearly on all-fours with those in this case that the conclusion reached there must control here.

The decree of the circuit court will be affirmed.

*Decree affirmed.*