**MARATHON OIL COMPANY, Plaintiff-Appellee,**

v.

**Gail HEATH and the Baltimore & Ohio Railroad Company, Defendants-Appellants.**

No. 15219.

United States Court of Appeals
Seventh Circuit.

March 3, 1966.

Rehearing Denied March 31, 1966.

John P. Wham, Centralia, Ill., Frederick E. Merritt, Salem, Ill., Wham & Wham, Centralia, Ill., of counsel, for defendant-appellant, Gail Heath.

Maurice E. Gosnell, Lawrenceville, Ill., for defendant-appellant, Baltimore & O. R. Co.

Joseph F. Diver, Findlay, Ohio, John H. Armstrong, Craig Van Meter, Mattoon, Ill., Craig & Craig, Mattoon, Ill., Clayton L. Orn, Findlay, Ohio, Riley B. Fell, Tulsa, Okl., of counsel, for plaintiff-appellee.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This is a diversity action in which the Marathon Oil Company, an Ohio corporation and successor of The Ohio Oil Company, sued Gail Heath and The Baltimore & Ohio Railroad Company for a declaration that certain gas and oil leases owned by the plaintiff include a part of the right of way over which the defendant railroad operates its trains in Lawrence County, Illinois. The plaintiff also requested an injunction prohibiting the defendants from drilling for oil and gas upon the lands in question.[1] The district court entered findings of fact and conclusions of law favorable to the plaintiff and by its decree granted the relief requested. This appeal followed.

The Ohio & Mississippi Railroad Company, predecessor in title to the B & O railroad, acquired the right of way in question by condemnation in 1853. The right of way is a parcel of land one hundred and fifty feet in width through the south half of the southeast quarter of section 7, township 3 north, range 12 west, Lawrence County, Illinois. The north and south boundaries of this strip run parallel with the railroad track, seventy-one and seventy-nine feet respectively from the centerline of the track.[2]

The district court construed the condemnation proceedings as granting the railroad merely an easement over the lands condemned. The court held that the fee, including the rights to the mineral deposits, remained in the persons who owned the lands at the time of the condemnation proceedings and that their titles passed by mesne conveyances to the landowners who entered into oil and gas leases with the plaintiff. The court also found that a portion of the right of way which lies south of an old wire fence running parallel to the railroad track had been abandoned by the railroad more than fifty years ago.[3] The court further found that the lessors of the plaintiff and their privies in title have been in "open, notorious, exclusive, hostile and adverse possession" of the "abandoned"

1. On June 1, 1961, defendant Heath entered into an oil and gas lease with the defendant railroad covering the right of way in question. During the pendency of this action Heath drilled a well on the leased premises. The proceeds from the oil produced have been impounded pending the outcome of this litigation.

2. At the time of the condemnation proceedings, the lands taken were part of two parcels, one owned by the widow and heirs of Joshua Dudley, deceased, and the

other by Commadore P. Phillips. Subsequent to the condemnation proceedings, these lands were subdivided into three parcels, each parcel having a different owner. The parcels are currently known as the Finley tract, the Lanich tract, and the Griggs tract. The plaintiff's oil and gas leases cover these tracts.

3. The part of the right of way lying south of the fence is approximately twenty-nine feet in width.

part of the right of way for a similar period. The court concluded that the defendants are barred from claiming any interest in the "abandoned portion" of the right of way.

## I.

■ The first issue is whether the B & O railroad has a fee interest in its right of way, subject only to the oil and gas lease granted to defendant Heath, or whether it has merely an easement. The question is one of law, to be resolved by a consideration of the Illinois statutes upon which the condemnation proceedings of 1853 were based and the decisions interpreting these statutes.

The formation of the O & M railroad was authorized by the Illinois legislature February 12, 1851. The railroad was empowered to "lay out, designate and establish" a road not exceeding one hundred and fifty feet in width, to appropriate to its own use all the lands so designated, and to "take grants and conveyances of any and all interests and estates therein." The statute provided that in the event the lands designated could not be obtained by voluntary purchase, "the same may be taken and paid for, if any damages are awarded, in the manner provided in 'An Act to Provide for a General System of Railroad Incorporations.'" The latter statute, approved November 5, 1849, set out a condemnation procedure not material here. The statute did, however, contemplate the taking of a fee by a railroad for use in the construction of its tracks, and thus is material in indicating the powers which the O & M railroad obtained by its legislative charter.

The condemnation actions instituted by the O & M railroad to acquire the right of way in question were prosecuted under an Illinois statute passed June 22, 1852 entitled "An Act to Amend the Law Condemning Right of Way for Purposes of Internal Improvement."[4] This statute specifically authorized railroad cor-

porations previously chartered by the legislature to avail themselves of its provisions. It provided for the filing of a petition with the circuit court of the county where the lands proposed to be taken were located, indicating the purpose of the taking. It required the appointment of commissioners to fix the compensation to be awarded the owners of the land and a report of the findings of the commissioners to the court. The act then provided that "upon the making and filing of any report * * * any party interested may appeal * * * but if no appeal is taken, the decisions, estimates and assessments as reported, shall be conclusive * * * and the right and title to that part of each tract required, in respect to which compensation is allowed or damages assessed, shall vest in the * * * corporation * * * upon the payment of the compensation and damages so fixed or assessed. * * * *"

The records of the 1853 condemnation proceedings here involved show that they conformed in all respects to the requirements of the 1852 statute. Each petition described the tracts proposed to be taken. Each requested the court to appoint commissioners for the purpose of fixing the compensation to be awarded the owners and further requested that upon payment, "the owners * * * may be required to make and deliver * * * a conveyance or release in fee" to the O & M railroad. The record shows that commissioners were appointed, the compensation to be awarded was set, no appeal was perfected, and payment in the amounts assessed was made. The proceedings in their entirety reflect an intention on the part of the railroad to take an interest in the lands condemned commensurate with the power granted by its charter.

The Illinois Supreme Court has considered the 1852 statute and has held that a railroad instituting condemnation proceedings under it acquired fee simple title to the lands condemned. In Bartlow

4. The 1849 statute was specifically mentioned in the condemnation proceedings, but the parties agreed that these proceed-

ings were conducted under the act of June 22, 1852.

v. Chicago, B. & Q. R. R., 243 Ill. 332, 336, 90 N.E. 721, 723 (1909), the court stated:

> Under the statute then in force [the act of June 22, 1852], when the property was taken and condemned for public use the condemnation was of the entire property, and the assessment of damages was held to be in satisfaction of all the title to the property, including the fee simple and all lesser estates.

A subsequent case, Keen v. Cleveland, C. C. & St. L. Ry., 392 Ill. 362, 64 N.E.2d 499 (1945), concerned the question of whether a certain deed to a strip of land used for the purpose of a right of way conveyed a fee simple title to The Cairo & Vincennes Railroad Company. That railroad was organized under a special act of the Illinois legislature in 1867 and was empowered to acquire and appropriate as much land as might be necessary for a right of way.[5] The question arose as to whether the railroad had been empowered to take a fee interest in those lands it acquired by voluntary conveyance. In the course of its decision, the court said:

> The eminent domain act of June 22, 1852, referred to in section 4 of the special act creating the Cairo & Vincennes Railroad Company, was construed by this court in Bartlow v. Chicago, Burlington & Quincy Railroad Co. * * *. It was there held that in eminent domain proceedings under said act, the railroad company condemning the land acquired fee-simple title to the lands condemned. The rights in and the power to take real estate by * * * the eminent domain act referred to in section 4, was the right to take and acquire fee-simple title.

There was, therefore, by section 4 of the act * * *, specific authority conferred to acquire fee-simple title and all lesser estates in lands by condemnation under the act of June 22, 1852.

> \* \* \* \* \* \*

It is clear that under the special act creating the Cairo & Vincennes Railroad Company, that company was authorized and empowered to acquire and hold title to real estate in fee simple, either by condemnation or voluntary conveyance. 392 Ill. at 374–375, 64 N.E.2d at 505.

From a reading of the act of June 22, 1852 and the decisions just cited, we conclude that the predecessor in title of the defendant railroad acquired a fee in the lands taken in the condemnation proceedings of 1853.[6] The cases relied upon by the plaintiff do not deal with the statutes pertinent to the case at bar and are inapposite for that reason.

II.

The remaining question is whether the adjoining landowners, the plaintiff's lessors, acquired title by adverse possession to the strip of land approximately twenty-nine feet wide lying south of the wire fence on the right of way condemned.

The district court ruled that the railroad had abandoned this strip and that the adjoining landowners had acquired title to it by adverse possession. We need not consider the question of abandonment inasmuch as we have already determined that the railroad acquired a fee simple title in its right of way. A vested legal title to a corporeal interest cannot be lost by abandonment. Chicago, Wilmington & Franklin Coal Co. v. Jilek, 42 F.Supp. 200, 204 (E.D.Ill. 1942).

---

5. The legislative charter of The Cairo & Vincennes Railroad Company is basically similar to that under which The Ohio & Mississippi Railroad Company was organized.

6. Section 13 of article II of the Illinois constitution, S.H.A., adopted in 1870, effected a change in the condemnation power of railroads from that granted by the statutes we have discussed by providing that railroads may acquire no more than an easement over the right of way taken. This change had no retroactive effect. Peoria & R. I. Ry. v. Birkett, 62 Ill. 332, 336 (1872).

Under Illinois law the doctrine of adverse possession must be construed strictly in favor of the owner of the title to the land. White v. Harris, 206 Ill. 584, 592, 69 N.E. 519 (1903). To acquire title by adverse possession, the possession must be actual, visible, and exclusive. Moreover, it must be hostile in its inception and so continue without interruption for a period of twenty years. Town of Kaneville v. Meredith, 351 Ill. 620, 624, 184 N.E. 883 (1933). Casual physical acts tending to show a claim of ownership do not constitute adverse possession, and permissive possession, even if long continued, does not confer title on the person in possession. Chicago & N. W. Ry. v. Kennedy, 344 Ill. 309, 317–318, 176 N.E. 269 (1931); Nitterauer v. Pulley, 401 Ill. 494, 503, 82 N.E.2d 643 (1948). In Hankey v. VanScyoc, 338 Ill. 533, 536, 170 N.E. 749, 750 (1930), the Illinois Supreme Court stated the requirements for acquiring title by adverse possession in these terms:

> The presumptions are in favor of the owner of the real title to the land, and to take it away from him on the claim of possession for twenty years, the proof must show that the claimant possessed it for twenty years, claiming title and exercising rights of ownership over the land. The possession must be open, notorious, hostile, and adverse, and must be uninterrupted for a period of twenty years. * * * Adverse possession cannot be made out against the true owner by inference or implication, but must be established by clear, positive, and unequivocal proof.

Applying the foregoing principles to the evidence in this case, we are of the opinion that the plaintiff failed to establish title to the strip of land in its lessors by adverse possession, and that the district court's contrary determination was erroneous. The evidence showed the existence of a deteriorated wire fence located approximately fifty feet south of the centerline of the railroad track. The plaintiff presented testimony that the fence was at least sixty years old and that it was originally erected and maintained by the railroad to keep errant livestock off its track. The evidence further established that north-south "property line" fences between the Finley, Lanich, and Griggs tracts connected with the railroad's fence. There was also testimony that a portion of the disputed strip of land may have been farmed at one time by the owners of the three adjoining tracts. The testimony in this regard must be characterized as inconclusive. On the other hand, the evidence showed that most of the twenty-nine foot strip in controversy is and at all relevent times was dotted with trees and overgrown with brush. Some of the plaintiff's own witnesses conceded that to their knowledge the tree and brush-covered area had never been cultivated. Nor does the evidence support the inference that the fence erected by the railroad was intended as a boundary designation. From all that appears in the record, the fence was designed only to protect the railroad from possible liability for injury to wandering stock. Further, it appears that the defendant railroad and its predecessor have paid the taxes on the right of way since the condemnation proceedings in 1853.

Thus the plaintiff's burden of providing clear and unequivocal proof that its lessor-landowners acquired title to the disputed strip of land by adverse possession was not sustained.

The decree and judgment of the district court is reversed.