JOHN SLATTERY

*v.*

RICHARD J. KEEFE.

*Opinion filed February 18, 1903.*

1. HOMESTEAD—*homestead acquired by widow continues though children move away.*  A homestead estate once acquired by the widow under the statute continues in her as long as she occupies the property, notwithstanding she ceases to be a householder "having a family" by reason of her children leaving home.

2. SAME—*when homestead is extinguished by deed.*  A deed from a widow living alone, to her married daughter, by which she voluntarily conveys her homestead property, releasing her homestead estate, extinguishes such estate, where the deed, though not given to the daughter, was recorded by the grantor's direction, who left the premises, intending her daughter to have the property in case she should not live to return.

3. SAME—*when statute exempting proceeds of sale of a homestead does not apply.*  The statute exempting the proceeds of the sale of a homestead for one year, pending the re-investment of the money in another homestead, does not apply where the deed of such homestead was voluntary and not a "sale," and there were no "proceeds" to be exempted by the statute.

4. SAME—*when party does not acquire a homestead.*  The re-conveyance of homestead property to the widow after she has once extinguished her homestead estate therein does not re-invest her with the extinguished homestead estate as against judgment liens, where she was not at the time of such re-conveyance, or afterward, a householder "having a family," and it is not shown that she occupied the premises as her home after the re-conveyance.

APPEAL from the Circuit Court of Knox county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

In 1888 Johanna Leonard, a widow with children, purchased lot 11, in block 53, in the city of Galesburg, in Knox county, Illinois, and took possession of the same, and occupied the premises with her family as a homestead.  She lived there until 1895, when she rented the premises to a tenant and went to her daughter, Margaret Powers, living in California.  She returned several times on visits, and finally, in July, 1901, returned to Galesburg to live.  Her daughter had died while she was in

California. The day before leaving for California, October 15, 1895, she made a deed of her homestead property to her daughter, Margaret Powers, waiving and relinquishing her homestead therein, and had it put on record. The daughter re-conveyed to her mother July 9, 1896, and died January 16, 1897. Mrs. Leonard kept this deed without recording it. Three transcripts of judgments against Mrs. Leonard were filed in the circuit clerk's office,—the first in favor of Wood & Felt, September 6, 1894; the second in favor of the O. T. Johnson Company, March 12, 1895; and the third in favor of Oestreicher Bros., March 20, 1895. An execution was levied on her property on the Johnson judgment April 24, 1895, and the property sold by the sheriff, by virtue of said execution, July 9, 1898, to John Slattery, the appellant, a brother-in-law of Mrs. Leonard. Executions on the other two judgments were levied October 9, 1899. Prior thereto the Wood & Felt judgment had been assigned to Richard Keefe, the appellee, a son-in-law of Mrs. Leonard, who satisfied the Oestreicher judgment by paying it. On the same day he redeemed from the sale to Slattery by paying the requisite redemption money. November 25, 1899, the premises were again sold on these executions, and Keefe became the purchaser, receiving a sheriff's deed for the same, dated the same day, but which was not acknowledged till January 5, 1900. Three days later the appellant, as next friend of Marguerite Phyllis Powers, the infant grand-daughter of Mrs. Leonard, filed a bill in the circuit court, in which he alleged that Margaret Powers, mother of the infant complainant, at the time of her death was in peaceable possession of the premises under a warranty deed from her mother, Mrs. Leonard, subject to the lien of two judgments against Mrs. Leonard, and that the infant complainant was the only child and heir of her mother and then in peaceable possession of the premises, and set up the various judgments and execution sales as above stated, alleging that before

the last sale to Keefe the requisite redemption money to redeem from these judgments and sales had been tendered to the sheriff and refused, and prayed that the last sale be set aside as a cloud on the title of the complainant and that the sheriff be enjoined from making a deed to the property. This case is still pending. On June 29, 1900, Keefe recovered a judgment against Mrs. Leonard for $469.57 for money loaned. At the November term, 1900, Mrs. Leonard filed her bill to set aside the sheriff's sale and deed to Keefe as a cloud on her title. Some evidence was taken, but she died October 30, 1901, before a decree was entered. Four days before her death she conveyed the premises to John Slattery, the appellant. He thereupon filed a bill of revivor. On a hearing both the original bill and the bill of revivor were dismissed by the court for want of equity. From this decree appellant has appealed.

J. J. WELSH, (WILLIAMS, LAWRENCE & WELSH, of counsel,) for appellant.

FLETCHER CARNEY, JAMES W. CARNEY, and JOHN E. MALEY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The principal question in this case relates to the homestead of Mrs. Leonard in the premises. Appellant insists that she never lost her homestead, and that as it was not set off by the sheriff prior to the sale, the sale is void. Appellee insists that she lost her homestead, first, by becoming the sole occupant of the premises when her children had all left the homestead; secondly, by her deed to her daughter relinquishing her homestead; and thirdly, by abandonment by her own removal to California. In the view we take of the case it will not be necessary to consider the last question—that of abandonment.

*First*—The contention is, that after Mrs. Leonard acquired the premises as a homestead her son went away

from home and her daughters married and left and all had other homes, and that she remained the sole occupant of the premises, and was therefore no longer a "householder having a family," as required by the statute. This question was considered and settled in *Kimbrel* v. *Willis*, 97 Ill. 494, and we there held, that after the homestead estate has once been acquired under the statute, it continues in the original owner so long as he occupies the homestead premises, although he may have ceased to be a householder having a family, and it will only become extinguished in some one of the modes mentioned in the statute, of which ceasing to be a householder having a family is not one.

*Second*—It is further contended, that when Mrs. Leonard conveyed the premises, with release and waiver of homestead, to her daughter, and went to live with such daughter, she thereby lost her homestead exemption. Appellant, on the other hand, contends that the deed never was delivered and accepted, and therefore it never became operative, and the homestead was not lost.

The execution and recording of a deed by the grantor is only *prima facie* evidence of a delivery, and liable to be rebutted by showing, among other things, that the conveyance was intended to confer no benefit upon the grantee. (*Union Mutual Life Ins. Co.* v. *Campbell*, 95 Ill. 267.) In *Weber* v. *Christen*, 121 Ill. 91, we laid down the following principles (p. 97): "Act and intention are the two elements or conditions essential to a delivery.  *  *  * This intent, of course, is to be gathered from the conduct of the parties,—particularly the grantor,—and all the surrounding circumstances. We think, in the case of an adult grantee, the acknowledging and recording of the deed without his knowledge or consent does not, of itself, according to the weight of authority, amount to a delivery. (Citing cases.) Yet if, from all the circumstances in such a case, it appears the grantor, by these acts, intended to give effect and operation to the deed and to

relinquish all power and control over it, we think it clear the law would give the deed effect accordingly,—in other words such acts would, in law, amount to a delivery. This would certainly be so in case of a voluntary settlement. * * * It is also true, as a general proposition, where nothing appears to show a contrary intention, that if the owner of an estate makes a conveyance of it and places the deed upon record without the knowledge of the grantee, the title will nevertheless pass, if the latter, on being informed of the transaction, assents to it. And where the conveyance is a voluntary settlement or to one who is not *sui juris*, a formal assent need not be shown, as it will, if nothing further appear, be presumed."

Mrs. Leonard, in her deposition, taken a few weeks before her death, testified: "I was going away on a long journey. My health was poor, and if anything happened to me I wanted Margaret Powers to have my place. That is the reason I deeded it to her. I wanted her to have it if anything should happen to me in my journey. It was not a sale. I did not know what would happen to me, and I wanted her to have it. I do not know what became of the deed that I gave to Margaret Powers. I do not know that that deed was ever sent out there. I do not remember. There was nothing said between her and me that I was going to make a deed to her. Mr. Slattery put the deed on record. I gave him the money to put it on record. I went away the next day." In regard to the re-conveyance to her Mrs. Leonard testified: "I wanted my home back again and she wanted I should have it. When I went out there I told her I wanted it back again, and she said I should have it. She did not want it. She wanted me to have my house back again. My daughter was in poor health, and she lived for seventeen months in poor health, with consumption."

The intention of the grantor, according to her own testimony, was, that the daughter should have this property; that she did not know what might happen to her,

and she wanted the daughter to have the property. The grantor evidently considered that she had fully given it to her daughter when she said that she told her that she wanted it back again. It was a voluntary deed, though for an expressed consideration of $1000. It was beneficial to the grantee. The re-conveyance was not made until after the grantor had been living for nine months in the home of the grantee and it had become evident that the mother would outlive the daughter. All the circumstances point to a valid delivery and acceptance of the deed. Both parties treated it as a valid conveyance, and it was determined to make a re-conveyance because the daughter was not expected to recover. Nor is the testimony of Mrs. Leonard's tenant at variance therewith. His lease began in May. The deed was made in October. He testified that he rented the property from Mrs. Leonard, but paid his rent to the First National Bank, except enough of it to cover repairs, which was paid to John Slattery. He had been ordered to do so by Mrs. Leonard. He paid the rent to the bank to apply on the mortgage that was held by the bank. He never received any orders to the contrary, and when Mrs. Leonard returned to Galesburg the property had been re-conveyed to her. The testimony in regard to her intention of making her home permanently in California is conflicting. The deed having been delivered and accepted, Mrs. Leonard thereby extinguished her homestead estate.

*Third*—It is claimed for appellant that as the statute exempts the proceeds of the sale of the homestead for the period of one year from execution or other process, and if re-invested in a homestead the same shall be entitled to the same exemption as the original homestead, and as the premises were re-conveyed to Mrs. Leonard within a year, therefore she held the same as a homestead without any judgments becoming liens thereon. The conveyance to her daughter was purely voluntary and she received no money for the same,—"it was not a

sale." There were therefore no proceeds to be exempt from execution and none to re-invest in a homestead.

*Fourth*—When Mrs. Leonard became re-invested with the title to the premises she was living in California with her daughter. She was not then, nor at any time since, a "householder having a family," and consequently could not acquire a homestead estate in the premises, and the judgments immediately became liens on the property. Nor was it shown that she occupied the premises as her home after they were re-conveyed to her.

No error appearing, the decree will be affirmed.

*Decree affirmed.*