FRANCES S. KIRBY *et al.* Appellees, *vs.* ELLSWORTH KIRBY *et al.* Appellants.

*Opinion filed October 26, 1908—Rehearing denied Dec. 2, 1908.*

1. DEEDS—*when deed does not pass title.* A deed made by a married woman and her husband conveying property standing in the wife's name to the husband's brother vests no title or interest in the grantee, even though it was recorded, where the deed was not intended to confer any benefit upon the grantee, who never had possession of the deed or of the land and who knew nothing about the deed until after the wife's death, when he was advised of the existence of the deed by the husband, to whom he then re-conveyed the property.

2. LIMITATIONS—*what does not show adverse possession.* Adverse possession by a father against his children under the twenty year Statute of Limitations is not established by the facts that during their minority, and later, he continued in possession of their mother's farm, in which he was entitled to homestead and dower, though dower was not assigned to him, and that he received the income from the land, mortgaged it and attempted to trade it, where there is no proof that the children had actual knowledge of the mortgages and the proposed trade although the conveyances were recorded, and where there is evidence of declarations by the father that he did not own the land.

3. SAME—*good faith is essential under section 6 of Limitation act.* In order to establish title under section 6 of the Limitation act it is essential that the claim and color shall have been acquired in good faith; and such good faith does not exist where the paper title relied upon is a deed, in which the description of the land has been materially altered and the deed then re-recorded.

4. EVIDENCE—*when children are competent witnesses.* In a partition proceeding by the widow, to which proceeding the complainant's children and children of the deceased husband by a former wife are parties, the step-children are not competent witnesses, as against their half brothers and sisters, to testify to declarations of their father to the effect that the land was their mother's and would be theirs eventually; but they are competent as against the complainant, who claims one-half of the land by virtue of a deed and homestead and dower in the other half.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

This suit originated by Frances S. Kirby, widow of Joshua Kirby, deceased, filing a bill for the partition of certain real estate. The bill alleged Joshua Kirby died intestate, seized in fee simple of the undivided one-half of the north-west quarter of the south-east quarter and the north half of the south-west quarter of section 18, town 20, north, range 10, east of the third principal meridian, in Champaign county, Illinois. The bill alleged that complainant was the owner of the other undivided one-half, and prayed for partition and for the assignment of homestead and dower to the complainant in the undivided one-half alleged to have been owned by her deceased husband.

Joshua Kirby had been married three times. By the first wife he had one son, who survived him: By the second wife he had a son and daughter, Ellsworth Kirby and Dora Trickle, who survived him. By the third wife, complainant in the original bill, he had seven children, who survived him, one of whom was born after his death. All of these children were made defendants to the original bill, as were also John R. Trevett and the Mutual Benefit Life Insurance Company, as mortgagees.

Ellsworth Kirby and Dora Trickle, children of Joshua Kirby, deceased, by his second wife, Mary E. Kirby, filed their answer to the bill, denying that complainant in the original bill owned any interest in the lands in the said bill

described, and denying also that their deceased father owned any interest in the fee of said lands, but alleged that said lands were owned in fee by their mother, Mary E. Kirby, at the time of her death, and that said lands descended to them, the said Ellsworth Kirby and Dora Trickle, from their mother in fee simple. The answer alleged that the only interest Joshua Kirby had in said lands was as surviving husband of Mary E. Kirby, deceased; that said interest ceased at his death, and that complainant was not entitled to either homestead or dower in said premises.

John R. Trevett answered the original bill and filed a cross-bill, alleging that Joshua Kirby and Frances S. Kirby owned the land in fee simple, and as such owners, in October, 1902, executed to complainant in the cross-bill a trust deed on said lands to secure the payment of a note for the sum of $2000, payable to Wallace P. Spalding two years after date, and prayed for the foreclosure of the trust deed.

The Mutual Benefit Life Insurance Company filed an answer to the original bill, and set up its interest in the lands, as mortgagee, of Joshua and Frances S. Kirby, to secure the payment of a note executed by them for the sum of $6000.

Ellsworth Kirby and Dora Trickle filed a cross-bill, in which they alleged that their mother, Mary E. Kirby, became the owner of the premises sought to be partitioned in 1876, by or from Peter Arie and wife, and that she owned the same at the time of her death, which the cross-bill alleges occurred August 15, 1879. The cross-complainants further alleged that on the first day of October, 1877, a deed was filed for record in the recorder's office in Champaign county purporting to have been executed by their mother and Joshua Kirby, her husband, dated October 1, 1877, to John J. Kirby, a brother of Joshua; that said deed purported to convey to said John J. Kirby the north-west quarter of the south-east quarter and the north-east quarter of the south-west quarter of section 18, part of the premises

described in the original bill; that said deed was recorded
in record book 41 of the deed records of said county; that
afterwards, on the 15th of February, 1882, there was filed
for record in said recorder's office a deed purporting to be
executed by Mary E. Kirby and Joshua Kirby to John J.
Kirby, bearing date October 1, 1877, purporting to convey
to said John J. Kirby the north-west quarter of the south-
east quarter and the north half of the south-west quarter
of section 18, being all of the premises described in the
original bill, and that this deed was also recorded in the
deed records of the recorder's office; that these matters oc-
curred during the infancy and without the knowledge of
the cross-complainants. The cross-bill alleges that no deed
from Mary E. Kirby conveying any portion of said prem-
ises to John J. Kirby was ever delivered to him; that he
paid no consideration therefor and had no knowledge that
such deed had been made and recorded until after the death
of Mary E. Kirby; that John J. Kirby never claimed any
interest in said premises and never accepted the deeds there-
for and had nothing to do with their recording, and that
said deeds are therefore invalid and of no effect and are
clouds upon the title of cross-complainants. The cross-bill
further alleges that two years after the death of Mary E.
Kirby John J. Kirby was informed by Joshua Kirby of the
making and recording of the deed to him and requested to
convey the premises to the said Joshua Kirby, which he did
without any consideration whatever, and that said deed con-
veyed no title to Joshua Kirby and is a cloud upon the title
of the cross-complainants. Said cross-complainants further
allege that they were infants of tender years and had no
knowledge of these things until after the death of their
father. The cross-bill prays for partition of the premises
between the cross-complainants, and that a decree be en-
tered that Frances S. Kirby and her children and the son
of Joshua Kirby by his first wife have no title to or inter-
est in said premises.

Answers were filed by the defendants to the cross-bill, and the cause was referred to the master in chancery to take the testimony upon the original and cross-bills, with directions to report his conclusions of law and fact thereon. After hearing the testimony the master reported recommending that a decree be entered according to the prayer of the original bill and the cross-bill of Ellsworth Kirby and Dora Trickle be dismissed for want of equity. Objections to the master's report were overruled by him and were renewed as exceptions before the chancellor. Said exceptions were overruled and a decree entered in accordance with the recommendations of the master in chancery, from which appellants, Ellsworth Kirby and Dora Trickle, have prosecuted this appeal.

RAY & DOBBINS, and SCHNEIDER & SCHNEIDER, for appellants.

FRANK H. BOGGS, (GEORGE W. GERE, A. D. MULLIKEN, and C. M. MATHEWS, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The proof shows the conveyance, by deeds, of two of the tracts of land described to Joshua Kirby in March, 1874, and of the other one in February, 1875. December 23, 1876, Joshua Kirby and his wife, Mary E., conveyed the premises to Peter Arie, and on the same day Peter Arie and wife conveyed them back to Mary E. Kirby. The proof does not disclose any reason for those deeds having been executed. On the first day of October, 1877, the records of the recorder's office show a deed bearing that date from Joshua Kirby and wife, Mary E., to John J. Kirby was filed and recorded. The record shows the land conveyed by this deed was the north-west quarter of the south-east quarter and the north-east quarter of the south-west quarter. The north-west quarter of the south-west quarter, which is a part of the land in controversy, is not mentioned in said

record. What is known as an entry book in the recorder's office contains a memorandum of the names of the grantor and the grantee, the date of the instrument, and of its filing October 1, 1877, and the property described as the north-west quarter of the south-east quarter and the north-east quarter of the south-west quarter, and that the deed was delivered to Joshua Kirby February 13, 1882. The book known as a grantors' index contains substantially the same memoranda as the entry book, except it does not show when and to whom the deed was delivered, and the land conveyed is described in that book the same as in the record and the entry book. The grantees' index is the same as the grantors' index, except that the names of the grantor and grantee are reversed in their order, and it described the land conveyed the same as the record, the entry book and the grantors' index. There is a notation on the margin of the record of the deed which reads as follows: "See 41 of deeds for re-recording to correct description.—Filed Feb. 15, 1882." On page 470 of the same record is the record of a deed dated October 1, 1877, signed by Mary E. Kirby and Joshua Kirby, purporting to convey to John J. Kirby the north-west quarter of the south-east quarter and the north half of the south-west quarter. It will be seen this includes the forty acres omitted from the description in the record and books previously mentioned. On the 13th of February, 1882, which is the same date the entry book shows the deed was delivered to Joshua Kirby, John J. Kirby executed a deed to Joshua Kirby purporting to convey to him the north-west quarter of the south-east quarter and the north half of the south-west quarter. This deed was filed for record February 27, 1882. On January 29, 1902, Joshua Kirby and wife conveyed all of said premises to a man by the name of Larry, and August 5 of the same year Larry conveyed said premises to Joshua and Frances S. Kirby, his wife. It is by virtue of this conveyance that the widow claims to own the undivided one-half in fee.

Appellants contend that the deed from Mary E. Kirby and Joshua Kirby to John J. Kirby was never delivered; that it was made and left for record without the knowledge and consent of the grantee, and that said grantee was ignorant of the fact that it had been made and left for record until long after the death of Mary E. Kirby. John J. Kirby was a witness in the case and testified that Mary E. Kirby never said anything to him about the deed, and that his brother, Joshua, never mentioned it to him until after the death of Mary E., when he told him the deed had been made and asked if he would convey it back to him; that he replied to his brother that he would do so,—that it was nothing to him; that when his brother brought a deed to him to sign, he signed and acknowledged it at his brother's request. He further testified he never saw the deed made by Mary E. and Joshua Kirby to him; that he never heard anything about any mistake in the description of the land or of the re-filing or the re-recording of the deed. It is apparent that the conveyance to John J. Kirby was never intended to vest any beneficial interest to the land in him. The recording of a deed by the grantor has been held to be *prima facie* evidence of delivery. But this is subject to be rebutted, and this was done by the testimony of John J. Kirby. He was never in possession of the land under the conveyance and never received any benefit from it. Mary E. Kirby and Joshua Kirby remained in control and possession of the land until the death of Mrs. Kirby, and Joshua continued in such possession until the conveyance to him from his brother, John J. In *Sullivan* v. *Eddy*, 154 Ill. 199, this court said (p. 208) : "When the deed is for his [the grantee's] benefit, under certain circumstances acceptance may be presumed, but not necessarily. Even in the cases which treat the act of recording as *prima facie* evidence of a delivery, it is held that such evidence is successfully rebutted by showing that the conveyance was intended to confer no benefit upon the grantee." In *Slattery*

v. *Keefe,* 201 Ill. 483, we said (p. 486) : "The execution and recording of a deed by the grantor is only *prima facie* evidence of a delivery, and liable to be rebutted by showing, among other things, that the conveyance was intended to confer no benefit upon the grantee." Other cases will be found cited in the two cases referred to, which sustain the contention of the appellants that the deed to John J. Kirby vested no title or interest in him.

The appellees contend that, even if this be true, Joshua Kirby acquired title by limitation, and they rely both upon twenty years' adverse possession and also seven years' possession under claim and color of title obtained in good faith. We are of opinion their title cannot be sustained upon either of these claims. It is not shown by the evidence what reasons Mary E. Kirby and Joshua Kirby had for making the deed to John J. Kirby nor the purposes sought to be accomplished by it. Whatever the motive may have been, under the facts as disclosed by the evidence in this record the grantee in that deed acquired no interest in the land but the equitable title remained in Mary E. Kirby, and the deed from John J. Kirby, after her death, to Joshua Kirby invested in him no title to or ·interest in the land. As the surviving husband of Mary E. Kirby he was entitled to an estate of homestead and dower in said premises, and this was the extent of his interest in them. The proof shows he continued to occupy the lands and receive the rents and profits therefrom until his death, which occurred in 1906. During this time he made some repairs to the improvements on the land and paid the taxes thereon. There is no proof in the record that the appellants had any actual knowledge of the conveyance from their mother to John J. Kirby nor of any of the conveyances made subsequent to that time. After their mother's death they resided with their grandfather until they were about fifteen years of age, when they went to reside with their father on the land in controversy. The daughter, a few years later, married a man named

Trickle, and Ellsworth continued to reside with his father. For a number of years he farmed a part of the land, his father furnishing teams and implements and Ellsworth receiving one-fourth of the crops he raised. In addition to occupying the premises and making some repairs to the improvements thereon, Joshua Kirby placed a number of mortgages on the land during his lifetime. In 1902, when the conveyance was made by him and his wife, Frances S., to Larry, it appears that it was made in a trade with Larry for lands in Jefferson county, Illinois. This trade afterwards was abandoned, and Larry conveyed the lands, as we have above stated, to Joshua and Frances S. Kirby. Before making this conveyance, and while he had the title to the land, Larry placed a mortgage on it for $8000, and when he conveyed it back to the Kirbys they mortgaged it for the same amount for money to pay off the mortgage Larry had made on the premises. The Kirbys made two mortgages,—one for $6000 and one for $2000,—and these are the mortgages held by Trevett and the Mutual Benefit Life Insurance Company. The acts of Joshua Kirby in retaining possession of the land, receiving the rents and profits therefrom, mortgaging the premises and proposing to trade them for other lands are acts relied upon by appellees to establish their claim that he held the land adversely to appellants. There is no proof in the record that appellants had any actual knowledge of any of the mortgages or of the proposed trade with Larry.

The master permitted appellants, over the objections of appellees, to testify as witnesses in the case. So far as we can find, no ruling of the court was made upon their competency. They testified to a number of statements made by their father in his lifetime, to the effect that the land was their mother's and that they would get it eventually, and gave their reasons for not asserting their right during the lifetime of their father. They also testified of their ignorance of any claim of their father to be the owner of the

land. In our opinion they were not competent witnesses against the children of their father by Frances S. Kirby and his first wife, but they were competent as against said Frances S. Kirby. She neither sued nor defended as heir. A Mr. Parsons and his wife testified that after the death of Mary E. Kirby Joshua Kirby told them she owned forty acres of the land. Albert Kirby, a brother of Joshua, testified that he heard Joshua, on Saturday before he died, tell Ellsworth the farm was in his mother's name. Alex Funkhouser testified he had known Joshua Kirby since 1859 and knew his wife Mary E., and that he was in the office of Larry & Larry, who were in the real estate business in Champaign, and met Joshua Kirby there; that they were trying to make some kind of settlement about a land trade; that Joshua Kirby had tried to sell or trade his land to Larry & Larry, but there appeared to be some dissatisfaction and that Kirby could not make a deed; that Kirby said to the witness, "You know why I can't," and the witness replied, "Is that the trouble?" and that what the witness referred to was the fact that the deed had been made to Mary E. Kirby.

We do not think, under the circumstances of this case and the relation of the parties to each other, that appellees have established title in Joshua Kirby by twenty years' adverse possession. As the surviving husband of Mary E. Kirby, Joshua Kirby had an estate of homestead in the premises and had a right to reside thereon. He was also entitled to dower in the residue of the land. While his dower was never assigned, yet the fact that he had a right of dower and homestead in the premises, and the further fact that the owners of the fee were his children, would require acts on his part of the most unequivocal character to render this possession adverse to his children. In *Zirngibl v. Calumet Dock Co.* 157 Ill. 430, it was held that the adverse possession required to constitute a bar to the assertion of the legal title by the owner must be "hostile or

adverse, actual, visible, notorious and exclusive, continuous, and under a claim or color of title." The same rule was announced in *Downing* v. *Mayes,* 153 Ill. 330, and many other cases to be found in our Reports. From the earliest decision in this State to the present time it has been held that a party claiming title by adverse possession must prove his possession was adverse to the true owner, by clear and positive evidence. This cannot be established by inference, but the proof must show clearly that the party in possession claimed the land as his own, openly and exclusively. In *White* v. *Harris,* 206 Ill. 584, this court said (p. 592) : " 'A party claiming title by adverse possession always claims in derogation of the right of the real owner. He admits that the legal title is in another. He rests his claim, not upon a title in himself as the true owner, but upon holding adversely to the true owner for the period prescribed by the Statute of Limitations. Claiming a benefit from his own wrong, his acts are to be construed strictly.' (*Cornelius* v. *Giberson,* 25 N. J. L. 31.) 'Adverse possession cannot be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be strict, clear, positive and unequivocal.' (*Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430.) The rule is, that every presumption will be made in favor of the holder of the legal title, and no presumption will be made in favor of the holder of color of title only."

In *Hunter* v. *Dennis,* 112 Ill. 568, George Dennis, owner of the land, had in his lifetime conveyed it by deed to Black to secure a loan. He died before paying the loan and securing to himself a conveyance of the land. After his death his widow paid the loan and Black made her a deed conveying to her the premises. The widow had one child, a daughter, by George Dennis, who was a minor when her father died. The widow and daughter lived upon the premises until the daughter's marriage, and after the marriage the daughter and husband continued to live with the widow

until the daughter's death, in 1880. She left five children surviving her. The deed from Black to the widow of George Dennis was made in 1854, and in 1882 the children of the daughter, as the legal heirs of George Dennis, deceased, filed a bill in chancery to have the deed from their grandfather to Black declared a mortgage, and for partition of the land, and for an accounting. The widow relied for her defense upon the Statute of Limitations. The trial court dismissed the bill filed by the heirs, and this decree was reversed, this court holding that as the widow had a homestead and dower right in the premises, although her dower had not been assigned, her possession was not adverse.

In *DeWitt* v. *Shea,* 203 Ill. 393, the widow of a deceased owner occupied and lived upon lands for more than forty years after the death of her husband, and it was held this possession was not adverse.

In *Musham* v. *Musham,* 87 Ill. 80, and *Riggs* v. *Girard,* 133 id. 619, it was held that the occupation by a widow of lands of her deceased husband in which she had right of homestead and dower, however long continued, could not be regarded as adverse to the heirs. The statute under which the dower right accrued in these cases gave the widow the right to the possession of the dwelling house and the plantation thereto belonging until the assignment of her dower. This was called the widow's quarantine, and was abolished by the act of 1874.

In *Reuter* v. *Stuckart,* 181 Ill. 529, a bill was filed by a surviving husband for the assignment of homestead and dower in real estate alleged to have been owned by complainant's deceased wife at the time of her death. The deceased wife of complainant was a widow when he married her, and her former husband, by whom she had five children, was the owner of the premises, and at the time of his death, December 29, 1874, the family resided on the premises in controversy. The bill alleged that complain-

ant's deceased wife had been in the adverse possession of the premises continuously since 1876 to her death, in 1897, and that during all that period the heirs of the former husband of complainant's wife had done nothing whatever to assert title to the land. The court said in that case (p. 543) : "We have held that the possession by the widow, under her statutory right, of the dwelling house and land is not adverse to the title of the heirs but is entirely consistent and in harmony with such title. (Citing cases.) It follows that in this case Mrs. Reuter acquired no title by an adverse possession of twenty years." See, also, 1 Cyc. 1051.

At the time of the death of Mary E. Kirby, appellant Ellsworth Kirby was less than two years old and Dora Trickle less than one year old. They were taken by their grandparents and resided with them until after their father's marriage to the present widow, and when they were about fifteen years of age they went to reside with their father. No guardian appears to have been appointed for them. There is nothing in this record to show that there ever existed any other than affectionate and filial relations between appellants and their father. Until they were of age they could not have assigned dower to their father except by a proceeding in court by guardian or next friend. If during their minority, and also after becoming of age, they were willing their father should occupy and receive the income from the land rather than embarrass him or disturb the family relations existing by dispossessing him of part of the premises, this alone would not defeat their right to claim the land after their father's death. So far as this record shows, the failure of appellants to assert their title before their father's death was on account of their relation to and their regard for him. The only thing the father ever did to indicate that he claimed to be the owner of the land was the procuring the deed from John J. Kirby to be made to himself and subsequently mortgaging the premises and endeavoring to trade them for other lands. As we have be-

fore stated, there is no evidence that appellants ever had
any actual knowledge of these facts, and we do not think
it can be held that they were bound to know of these acts
of their father because the conveyances were recorded. All
the verbal declarations proven to have been made by Joshua
Kirby prior to his death tend to show that he recognized
that his deceased wife, Mary E., was the owner of a part
or all of the land, and his last declaration on this subject
proven was made only a few days before his death. While
the naked legal title of record appeared to be in Joshua
Kirby, upon the strength of which he was able to procure
credit by mortgaging the land, he was bound to know that
the equitable title never passed out of Mary E. Kirby by
the conveyance to John J. Kirby, and that after her death
John J. Kirby could not convey the title to him. There was
no proof that Joshua Kirby's possession was hostile in its
inception, and nothing was done by him upon the death
of his wife to indicate any change in the character of his
possession. So far as shown he continued in possession,
neither doing nor saying anything, aside from the convey-
ances mentioned, to give any notice that he claimed the land
adversely to his children, or that he claimed possession by
any other right than that of surviving husband of his de-
ceased wife. In the absence of clear and positive proof to
the contrary, in view of the relations of the parties, his pos-
session of that portion of the premises not included in the
homestead would be presumed to be permissive and not
adverse. (1 Am. & Eng. Ency. of Law,—2d ed.—821.)
"And where the possession had been consistent with or in
submission to the title of the real owner, nothing but a clear,
unequivocal and notorious disclaimer and disavowal of the
title of such owner will render the possession, however long
continued, adverse." (*Rigg* v. *Cook,* 4 Gilm. 336.) In
such cases, notice of the adverse claim would have to be
actual or the hostile character of the possession so manifest
and notorious that notice would be presumed, and the bur-

den is on the party alleging the adverse possession to prove it. The proof further shows, as we have seen, that Joshua Kirby made declarations inconsistent with a claim of adverse possession. Most of such declarations proven, it is true, were made to and proven by appellants, whose testimony is only competent to be considered against the claim of Frances S. Kirby, but there was proof of declarations by Joshua Kirby inconsistent with the claim of adverse possession, made by other witnesses. It may be admitted it was slight proof, but as it tended to show that Joshua Kirby recognized the title of appellants and that his possession was subordinate thereto, it is entitled to greater weight than would be the case if the parties occupied different relations toward each other. As to the interest claimed by Frances S. Kirby, the proof is abundant and conclusive that Joshua Kirby made frequent declarations that he did not claim to own the land. Such declarations are competent evidence and prevent the running of the statute. (*Beecher* v. *Parmele*, 31 Am. Dec. 633; *Deming* v. *Carrington*, 30 id. 591.) The intention with which possession is taken or held is a material factor in determining whether it is adverse. There must be an intention to claim title as owner, in derogation of the rights of the true owner. *McNamara* v. *Seaton*, 82 Ill. 498; *Ewing* v. *Burnett*, 11 Pet. 41; 1 Am. & Eng. Ency. of Law, (2d ed.) 798.

We think the proof warrants the conclusion that the deed from Mary E. and Joshua Kirby to John J. Kirby described only two of the tracts of land in controversy and that the north-west quarter of the south-west quarter was omitted from the description contained in said deed, and that the deed was altered after it was recorded, and after the death of Mary E. Kirby, so as to include the last mentioned tract of land, and after being so altered was re-recorded. To acquire title by adverse possession it is not necessary that the possession and claim of ownership be made under any muniment of title, but there must be a

claim of ownership and such acts under possession as to show that the party in possession in fact claimed title to the land. It may be that the facts proven in this case would warrant the conclusion, as against anybody else than his children who claim the title, that his possession was adverse, but as against his children, who own the fee subject to his homestead and dower, his possession cannot be held to be adverse.

Neither can title in Joshua Kirby be sustained under section 6 of the Statute of Limitations. That section requires possession, under claim and color of title made in good faith, for seven successive years and the payment of taxes on the premises during that period. It is an essential element of title under that section that it should have been acquired in good faith. The holder of the title need not be ignorant of the fact that someone else claims title to the premises through some other source, but it is necessary that his title, from whatever source derived, should be obtained in good faith. What we have already said conclusively shows that the paper title by virtue of which Joshua Kirby claimed to own the land was not obtained by him in good faith.

Appellants do not contest the right of the mortgagees, made parties defendant to this proceeding, to have their mortgage liens preserved and satisfied out of the premises, but concede that said mortgagees are entitled to that relief.

The decree of the circuit court is therefore reversed and the cause remanded, with directions to that court to deny the relief prayed in the original bill and to enter a decree in favor of the complainants in the cross-bill, in accordance with the views herein expressed.

*Reversed and remanded, with directions.*