# William S. Kline and Eloise Mason, Appellees, v. Frank Marty, Executor, et al., Appellants.

## Gen. No. 16,440.

1. APPEAL AND ERROR—*presumptions.* It will be presumed on appeal that a chancellor considered only proper evidence.

2. CREDITOR'S BILL—*not denied though judgment creditor and beneficially interested.* A judgment creditor will not be denied the right to bring a creditor's bill because he is not beneficially interested.

3. JUDGMENTS—*effect of appeal from order removing stay of execution.* Where an appeal from an order removing an order staying execution has been perfected, the stay is revived.

4. JUDGMENTS—*when entitled to priority over homestead.* A judgment lien antedating a homestead is entitled to priority.

5. JUDGMENTS—*doctrine of inverse order of alienation applies.* Property acquired and sold by a judgment debtor subsequent to a sale of other property held by him is the first subject to the satisfaction of the judgment lien.

6. JUDGMENTS—*priority of lien.* A chancellor's decision that a judgment lien is to be given priority over a trust deed of certain premises purchased by the judgment debtor subsequent to the rendition of the judgment will not be disturbed when all the circumstances taken together justify the inference of an attempt to delay creditors.

7. APPEAL AND ERROR—*argument.* A printed argument which is in parts flippant and in passages abusive of opposing counsel is improper.

8. JUDGMENTS—*time of judgment lien.* Where execution is stayed one month and eighteen days after judgment and thereafter an erroneous order allowing execution is issued, but in one month and three days an appeal is taken from such order and it is reversed but the cause is remanded to the Superior Court with directions to enter a judgment order which will remove the stay, there are nine months and ten days during which the judgment lien remains without the issuance of an execution.

9. JUDGMENTS—*duration of lien.* Where execution was stayed and a subsequent order allowing execution was appealed from and reversed but the case was remanded with directions to enter a judgment order which would remove the stay, the matter is not complicated by the fact that an unauthorized memorandum of a judgment which was never entered was added and a void execution violating the stay order issued and void proceedings had

thereon, and the party against whom the original judgment was had, at whose instance the unauthorized memorandum and proceedings were expunged, cannot complain of it.

10. CREDITOR'S BILL—*deposits in court.* The rights of a complainant on a creditor's bill are not affected by an agreement on conveyance of homestead property, whereby money was to be held in escrow for the defendant subject to the judgment lien, and a clause of the decree is correct which orders the holders of such money who tendered it into court to pay it to the complainant.

Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed July 8, 1912. *Certiorari* denied by Supreme Court (making opinion final).

WILLIAM T. DICKERMAN and JOSHUA W. LEWIS, for appellants.

DANIEL S. WENTWORTH and W. A. JENNINGS, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal by the executor of the last will and testament of Elenor Lyman, deceased, and others from a decree rendered by the Superior Court of Cook county against them on a creditor's bill brought against Elenor Lyman in her lifetime and several other persons. The other defendants were Henry Schaaf, James E. Daughters, W. G. Dickerman, Marcellus Hopkins, Frank B. Teed and Englewood Elevated Railway Company. Joe Hunter was afterwards by amendment made a party. Elenor Lyman died during the pendency of the bill and her executor was substituted as party defendant in her place and adopted her answer.

The decree appealed from recites as its findings a judgment by confession for $1,350 on May 20, 1902, in favor of William S. Kline and Eloise Mason against Elenor Lyman and William Durrant in the Superior Court of Cook county, an order of the Superior Court on July 7, 1902, giivng the defenfants leave to plead

and staying execution on the judgment, which was to stand as security, a trial on the issues before a jury and a verdict in favor of the plaintiff for $1,500, a judgment of the date of February 25, 1905, as follows: "Therefore it is considered by the court that the judgment entered herein of record on the 20th day of May, A. D. 1902, in favor of the plaintiffs and against the defendants for the sum of $1,350, to stand in full force and effect as at the time of the rendition, and the additional sum of $150, making a total of $1,500, and that the plaintiffs have execution against the defendants Elenor Lyman and William Durrant for said judgment as aforesaid, together with their costs and charges, etc."; an appeal from said judgment order to the Appellate Court; the death of said William C. Durrant September 1, 1906; the judgment of the Appellate Court on October 8, 1906; and the mandate of said Appellate Court filed in the Superior Court November 17, 1906, which mandate provides that the said cause be remanded to the Superior Court with instructions to vacate the judgment of February 25, 1905, and to enter in its stead a judgment in the following form: "Therefore it is considered by the court that the judgment entered herein on May 20, 1902, in favor of the plaintiffs and against the defendants for $1,350 stand in full force and effect as of the time of its rendition." The decree also recites that on November 27, 1906, the Superior Court records show an order redocketing the cause under the mandate and also a judgment purporting to be entered as per mandate; that on December 11, 1905, an execution was issued, placed in the sheriff's hands, and a sale of certain property thereunder had on February 5, 1907; that on February 11, 1908, an order was entered expunging all of the alleged order of November 27, 1906, except the portion redocketing said cause, quashing the execution of December 18, 1906, and annulling and setting aside the sale of February 5, 1907; that on Feb-

ruary 20, 1908, on motion of the complainants, the Superior Court entered a judgment in form as directed by the mandate of the Appellate Court in the cause; that after the entry of the judgment for $1,350 on May 20, 1902, and before the entry of the stay order on July 7, 1902, no execution was placed in the hands of the sheriff nor was any execution so placed after the entry of the judgment of February 25, 1905, and before the filing of the appeal bond on April 1, 1905, and that no valid execution was placed in the hands of the sheriff between November 17, 1906, and February 20, 1908; that the first valid execution in said cause was dated March 7, 1908, and was obtained from the clerk of the Superior Court by Daniel S. Wentworth, and that it was by him placed in the hands of the sheriff and was returned by the sheriff in the manner set out in the bill of complaint (*i. e., nulla bona,* etc.). The decree further finds that the first order of court vacating or tending to vacate the order of July 7, 1902, staying the execution on the judgment of May 20, 1902, was the judgment of February 25, 1905, which judgment was appealed from April 1, 1905, and the second purported order to that effect was that part of the alleged order of November 27, 1906, giving full force and effect to the judgment of May 20, 1902. It then finds that on May 20, 1902, the defendant, Elenor Lyman, had title to certain real estate in Cook county (describing it), known as 6324 Eggleston avenue, subject to a trust deed to secure a note of Elenor Lyman for $1,200 dated March 4, 1902, and payable in five years from date, which note was paid and trust deed released on January 4, 1905, and that Elenor Lyman occupied said 6324 Eggleston avenue as her homestead; that on December 30, 1904, Elenor Lyman, by warranty deed, conveyed to Marcellus Hopkins the said real estate at 6324 Eggleston avenue for a consideration of $5,500, warranting said premises to be free from all liens, but retained and exercised the right to remove the building from said property;

that at the time of the said conveyance the Englewood Elevated Railroad Company signed a written instrument wherein it was agreed to pay Elenor Lyman or order $1,400 with 2 per cent. interest from December 30, 1904, when the judgment of May 20, 1902, should cease to be a lien on said premises so conveyed, but that in said instrument Marcellus Hopkins is named as the first party and Elenor Lyman as the second party, and they are the only parties therein named, and that said instrument was never executed by Marcellus Hopkins in his own name; that on September 20, 1905, Hopkins conveyed a portion of said property, namely, the north four feet of lot 11 and the south one-half of lot 10 in block 2 in the University Subdivision of Englewood (which for convenience in this opinion we shall hereafter designate herein as Lot A., designating the remainder of the premises at 6324 Eggleston avenue as Lot B.) to the Englewood Elevated Railroad Company, and on April 19, 1906, the Englewood Elevated Railroad Company conveyed said Lot A. to the South Side Elevated Railroad Company, and that the South Side Elevated Railroad Company received from the Englewood Elevated Railroad Company the $1,400 and interest payable to Elenor Lyman or her order hereinbefore referred to; that on the date of the filing of the bill of complaint in this cause the title of Lot A. was in the South Side Elevated Railroad Company, and of Lot B. in Harry F. Williams; that on April 1, 1905, Elenor Lyman, for a valuable consideration, assigned to James E. Daughters the agreement in her favor for $1,400 before described; that on December 6, 1906, Daughters notified the Englewood Elevated Railroad Company of said assignment, and on August 1, 1907, for a valuable consideration assigned the agreement to Henry Schaaf, and on December 13, 1907, Henry Schaaf notified the Englewood Elevated Railroad Company of the assignment, and that Henry Schaaf is now the holder and owner of said agreement for

$1,400 aforesaid; that Williams and the South Side Elevated Railroad Company now bring into court $1,400 and the stipulated interest from December 30, 1904, and ask leave to pay the same to the clerk and be discharged from the obligations of the Englewood Elevated Railroad Company to pay said sum to Elenor Lyman and all claims of the complainant under her bill of complaint.

The decree further finds that on May 20, 1902, Elenor Lyman had title to another lot in the University Subdivision of Englewood, known as 6317 Eggleston avenue (which for convenience will be designated in this opinion as Lot C.), subject to an encumbrance by trust deed of $1,800 due five years after June 14, 1899; that said encumbrance has been extended from time to time and has been reduced to $1,600 and is a lien superior to any claim of the complainants' judgment; that in May, 1904, Elenor Lyman, while occupying Lots A. and B. as her homestead, became sick and moved into a steam heated flat in order to regain her health, without any intention of abandoning her homestead, but with the intention of returning thereto as soon as her health would permit; that on December 30, 1904, she conveyed said property to Marcellus Hopkins and duly released her homestead; that a part of said property by subsequent conveyance became a part of the right of way of the South Side Elevated Railroad Company; that within one year after the sale of her homestead Elenor Lyman used a part of the money received to reduce the encumbrances that had become a lien against Lot C., subsequent to May 20, 1902, and in moving the house from Lots A. and B. to 636 West 65th place (designated in this opinion hereafter as Lot D.), and in the payment of $189 on account of fees to W. T. Dickerman, and that within a year after the sale of Lots A. and B. she claimed Lot C. as her homestead, with the intention of moving thereon and occupying the same as her residence as soon as her health should per-

mit; that after the sale of Lots A. and B. the rents from Lot C. were used to maintain her while living in the steam heated flat; that in May, 1907, Elenor Lyman moved into the lower flat of the building on Lot C. and lived there continuously until her death; that on May 20, 1902, she was a widow without living descendants, and so continued until the date of her death; that on May 27, 1909, she died, leaving surviving her Laura Durrant, Rosie Mason and Dorcas Blanchard, her nieces, James Durrant and Robert Durrant, her brothers, and William Blanchard, her nephew, as her heirs at law and next of kin.

The decree further finds that upon the death of Elenor Lyman her heirs took possession of Lot C. and collected the rent for the month of June, 1909, but were thereafter dispossessed by a receiver appointed in this case by the Superior Court on July 23, 1908; that said receiver after his appointment acted as such until November 21, 1908, when an order was entered directing said receiver to cease collecting the rents until further order; that an order for the resumption of said collection was entered without notice to the heirs, and that since July, 1909, said receiver has been in full control of said Lot C.; that at the time the bill of complaint herein was filed, said Lot C. was valued at $2,400 and encumbered for $1,600.

The decree also finds that W. T. Dickerman has been since May, 1902, the attorney for Elenor Lyman, and that to secure the payment of fees due and to become due, Elenor Lyman, at the request of Dickerman, moved the building from Lots A. and B. and placed the same on Lot D., the record title to which was then in Frank B. Teed, having been acquired by him on April 14, 1905, by a warranty deed from Walter L. Brooks and wife; that Teed never paid any consideration for said property and held it in trust for Elenor Lyman subject to a lien of Dickerman for services rendered and to be rendered; that Teed conveyed said Lot D. to Henry Schaaf by trust deed recorded June 8, 1905,

to secure a note of Elenor Lyman to Henry Schaaf for $600 due in five years from date; that on December 30, 1905, Teed executed and delivered his trust deed on Lot D. to secure a note of Elenor Lyman due in three years from date (the note is not otherwise described in the finding), which said note of Elenor Lyman was also secured by her trust deed on Lot C.; that Henry Schaaf is now the legal owner and holder of said notes; that on August 10th (year not mentioned) Teed conveyed, at the request of Dickerman and with knowledge of Elenor Lyman, by quit-claim deed, said premises to James E. Daughters, who claims "to hold the property in trust for Elenor Lyman, subject to his claim of lien and claim of Dickerman;" that Elenor Lyman never had any title of record to said Lot D., and on August 8, 1907, by her unrecorded written declaration, duly executed, acknowledged that Daughters was seized in fee simple of lot D. and of the issues thereof, to be held until there should be paid to Dickerman $870 and interest, and until Daughters should be released from bonds signed by him for Elenor Lyman, and then to be conveyed to Elenor Lyman; that Dickerman claims a balance of $400 and Daughters is still liable on an $80 bond to Elenor Lyman; that on December 14, 1906, a good and valid mechanic's lien claim was filed against Lot D., which was released without being paid on the demand of Teed; that on June 5, 1908, on a note given in payment of the indebtedness of Elenor Lyman a judgment was entered by the Circuit Court of Cook county in favor of Henry Schaaf against James E. Daughters and Elenor Lyman; that on an execution issued on said judgment the sheriff on July 7, 1908, sold all the interest of Daughters and Lyman in said Lot D. to Joe Hunter, who received a certificate of sale which entitled the holder to a deed from the sheriff on October 8, 1909.

Further findings are that the defendants, Schaaf, Dickerman, Teed and Hunter have nothing in their

possession or control belonging to Elenor Lyman which should be applied to the claim of the complainants; that Frank Marty is the executor of the will of Elenor Lyman and administrator of the estate of William Durrant, but that there are not sufficient personal assets in either estate to pay any part of the claim of the complainants; that the South Side Elevated Railroad Company, Williams, Dickerman and Daughters had knowledge of the judgment of May 20, 1902, against Elenor Lyman before they acquired any rights in the property in which Elenor Lyman had an interest; that Elenor Lyman never made a formal conveyance of her title to the building moved from Lots A. and B. to Lot D.; that after Teed took title to said Lot D. to August, 1907, both while the title was in Teed and while it was in Daughters, Elenor Lyman exercised control as to the conveyances of it and otherwise, rented it and handled the rents, etc., and that after August, 1907, Daughters controlled it; that Teed took title to Lot D. by deed of April 14, 1905, and conveyed the same by trust deed of June 6, 1905, to secure a $1,600 note of said Elenor Lyman; that there is nothing of record as to the title to Lot D. showing the conditions between Elenor Lyman and Teed and Daughters, by which they held title to the said Lot D.; that all evidence of indebtedness between Schaaf, Teed and Daughters was the original indebtedness of Elenor Lyman; that neither Teed nor Daughters paid or received any consideration for Lot D., and that they held the title merely in trust; that the agreement of December 30, 1904, whereby $1,400 was held in escrow, is null and void so far as the complainant's rights are concerned; that the judgment of May 20, 1902, has continuously since then been a valid lien against Lots A., B. and C.; that the South Side Elevated Railroad Company, and Williams hold title to Lots A. and B. subject to said lien; that said lien followed the building moved from Lots A. and B. to Lot D.; that the lien of said judgment on Lot C. is subject to the prior

encumbrance of $1,600; that Lot D. was the property of Elenor Lyman from April 14, 1905, to her death, and that the lien of the said judgment is prior to the claims of Dickerman, Daughters, Bay, Hunter, the heirs and assigns of Elenor Lyman, and the indebtedness evidenced by the trust deed to Schaaf; and finally that the complainants are entitled to the relief prayed for.

These being the findings, on them the following decreeing clauses were based:

(1, 2, 3) That the judgment of May 20, 1902, is a valid lien on Lots A., B. and D. and on Lot C., subject to a trust deed securing $1,600.

(4) That the receiver appointed on July 23, 1908, assume control of and collect rents of Lot D. until further order;

(5) That if a sale is had of the aforesaid property (to-wit, Lots A., B., C. and D.) to satisfy said judgment of May 20, 1902, the complainants proceed first against Lot C., and for the balance, if any, against Lot D., and then for the balance, if any, against Lots A. and B.;

(6) That the South Side Elevated Railroad Company and Williams pay the money by them tendered in court to the complainants on account of the judgment of May 20, 1902, and their costs in the case at bar;

(7) That the complainants have execution for costs in the case at bar;

(8) That the defendant Daughters' account for moneys collected on Lot D. and file an account within fifteen days to abide further order of the court.

Before discussing the correctness of this decree under the showing of the record, we feel it necessary to advert to the impropriety of much of appellees' printed argument submitted to us. It is in parts flippant and in passages is abusive of the counsel for the appellants. Attorneys, solicitors and counsel prac-

ticing in this court are officers of the court and should treat each other with at least the formal courtesy that such a relation to the court demands. We regard a contrary spirit shown in arguments submitted to us disrespectful to the court as well as to the opposing counsel.

We pass to the merits of the case.

It is evident that the findings of fact and law in the decree support the ordering part of the decree. It is against these findings, therefore, that the arguments of appellees are chiefly directed. But the point is made at the outset that improper evidence was considered by the court and incorporated in the findings. It is sufficient to say of this that we do not think there was any injurious error in admitting evidence. The question before the court was as to what rights of the complainants existed at the time of the judgment on May 20, 1902, and persisted up to the time of the trial, or had been acquired since; and the whole history of the case chronologically was necessary that this might be rightfully decided. Nor did the evidence contradict the stipulation about the facts properly construed. Moreover, the Chancellor will be presumed to have considered only proper evidence. We think that all evidence shown by his findings to have governed his conclusions was proper.

It is also urged that the stipulation contradicts the allegations of the bill that there was due to them $1,350 and costs and interest, and insist that it shows, on the contrary, that D. S. Wentworth, one of the owners of the note on which the judgment was rendered, had paid appellees all that was due to them, and that appellees in consequence had no interest in the judgment. We do not think there is any merit in this point. The creditor's bill is filed on a judgment in favor of the appellees, who are the judgment creditors. That they were properly so is the decision of this court in Lyman v. Kline, 128 Ill.

App. 497. As such judgment creditors of record they have a right to bring this bill. If they are trustees in any sense or bound to account for the proceeds of what they may collect on the judgment, that lies between them and the parties whose money went into the notes, or who have since reimbursed them. The defendants at least are not concerned with or injured by the situation, and will be fully protected by any payment made, voluntary or involuntary, on this judgment against any claim from any other person.

The next point made by the appellants attacks the findings and decree of the court, that the judgment of May 20, 1902, is a lien on Lots A., B., C. and D., from its rendition on May 20, 1902, and on Lot D. from April 14, 1905, at which time the lot became the property of Elenor Lyman.

Passing for further consideration all other questions involving the existence of such a lien and the effect and priority to be accorded it in case of each of the parcels of land, we will dispose first of the proposition of appellants that there was no lien arising from the judgment of May 20, 1902, existing continuously from the date of the judgment, or at any time until a valid execution was placed in the hands of the sheriff, because no execution was issued within one year of May 20, 1902. We do not think it sound. The Act concerning Judgments and Decrees, etc., provides that a judgment shall be a lien on real estate for seven years from the time it is rendered, but that when execution is not issued on a judgment within one year from the time the same becomes a lien, it shall thereafter cease to be a lien, but execution may issue upon such judgment at any time within seven years, and shall become a lien on such real estate only from the time it shall be delivered to the sheriff or other proper officer to be executed.

But this condition is subject to the further provis-

ion that "When the party in whose favor a judgment is rendered is restrained, by injunction out of chancery or by appeal or by the order of a judge or court, or is delayed on account of the death of the defendant either from issuing execution or selling thereon, the time he is so restrained or delayed shall not be considered as any part of the time mentioned," etc.

In the case at bar the judgment was rendered May 20, 1902. Up to July 7, 1902—one month and eighteen days—execution might have issued. This left ten months and thirteen days of the year during which execution must have been issued to continue the lien of the judgment in force for longer than a year. But on July 7, 1902, execution was stayed by the court until its further order. On February 25, 1905, an erroneous order was entered allowing an execution on the original judgment with an addition of $150, but an appeal to the Appellate Court was prayed and on April 1, 1905, was perfected by the filing of an appeal bond. If execution might have issued during this one month and three days, there was still left of the year, within which execution might be taken out to continue the lien, nine months and ten days, when the plaintiffs were again stayed in its issuance. From that time until February 20, 1908, we think that the stay order of July 7, 1902, was in force. The appeal when perfected suspended the operation of the judgment of February 25, 1905, which had removed the stay of execution ordered on July 7, 1902. When the removal was thus suspended, the stay revived. That was both the necessary purpose and result of the appeal. While the appeal was pending, therefore, the stay remained in effect. This court on hearing reversed the judgment which removed the stay. That judgment being thus cancelled and held for naught, the stay still remained in effect. It is true that the mandate of the Appellate Court reversing and cancelling the judgment of February 25, 1905, remanded the case to the

Superior Court with directions to that court to enter another and different judgment order, which when entered would have again removed the stay on the execution. But the Appellate Court did not enter such a judgment order. It directed the Superior Court to do it, and the Superior Court did not do it until February 20, 1908. There was then at least nine months and ten days from that time during which the judgment would remain a lien without the issuance of an execution.

But an execution was issued and placed in the hands of the sheriff on March 7, 1908, that is, within a few days of the removal of the stay.

The judgment of May 20, 1902, had therefore been a lien ever since its entry and remained so up to the time the bill in the case at bar was filed on July 18, 1908. The matter is not really complicated by the fact that an unauthorized memorandum of a judgment which was never in fact entered was, according to the language of the Superior Court in its order of February 11, 1908, "added" to the record of that court "without the consent or authority of the court by some person at this time unknown to the court," and that because of such memorandum a void execution in violation of the stay order was issued on the judgment of May 20, 1902, and void proceedings, subsequently cancelled, had under the alleged authority of said execution. It was at the instance of the appellants themselves that the expunging action of February 11, 1908, was taken, and they are not complaining of it. They could not if they would.

With the basis of decision reached that the judgment of May 20, 1902, was a lien on the legal and equitable interest of Elenor Lyman in real estate in Cook county from May 20, 1902, to the filing of the bill in this case, the solution of the subsequent questions raised as to the correctness of the decree is not difficult.

That the agreement of December 30, 1904, whereby $1,400 was held in escrow, does not affect complain-

ants' rights, and that the ordering clause of the decree is correct which provides that the South Side Elevated Railroad Company and Williams should "pay the money by them tendered in court to the complainants on account of the moneys due and owing to the complainants under their judgment entered May 20, 1902, and their costs herein incurred," patently follows, and of it nothing more need be said.

The payment of this $1,400 and the interest provided for will go far towards satisfying the claim of complainants, but as there is probably a balance to be provided for, the correctness of the further ordering provisions of the decree must be considered. For such balance there should first, according to the decree, be sold under the lien found existing, Lot C. (6317 Eggleston avenue). We can see no objection to this. No homestead was ever acquired by Elenor Lyman in those premises (Slattery v. Keefe, 201 Ill. 483), and if there had been one so acquired, the lien of the judgment of May 20, 1902, plainly antedated it and would have priority. First National Bank v. Vest, 187 Ill. 389. This property is, however, subject to the prior lien of an encumbrance of $1,600 mentioned in the decree, and can only be sold under the judgment lien sought to be enforced subject to said trust deed lien.

If after a proceeding against this property there still remains a balance due, the decree provides that there may be a sale next of Lot D. (636 West 65th place), and after that, for any further balance, of lots A. and B. (6324 Eggleston avenue). That the interest of Elenor Lyman or her heirs in 636 West 65th place, if there be a lien against it, should be sold before the premises at 6324 Eggleston avenue (which had been conveyed to Marcellus Hopkins under a warranty deed before any interest of Elenor Lyman ever attached to the West 65th place property) is plain from equitable principles. The doctrines of sales under the inverse order of alienation apply. But it is maintained by appellants that as Elenor Lyman never

had title of record in this property and Daughters had such record title, and as Joe Hunter bought said Lot D. on July 7, 1908, at a sheriff's sale, on a judgment of Schaaf rendered June 5, 1908, against Daughters and Elenor Lyman, there is no right in the complainants prior to said Hunter's.

If Elenor Lyman was the equitable or beneficial owner of Lot D. on June 7, 1908, the lien of the judgment of Schaaf then rendered against her and Daughters was subject to the lien of the judgment of the complainants against her and Durrant of May 20, 1902. And if Lot D. was bought with Elenor Lyman's money in April, 1905, and she moved a house which she owned on to it, and directed all alterations, secured tenants for it and until August, 1907, collected the rents for it, it would go far to show that she was such equitable owner. In fact the answer of Daughters admits this in asserting that she had a right to receive the title from him after certain indebtedness from her to Dickerman had been paid and he (Daughters) relieved from certain surety obligations. This is not a case of a fraudulent conveyance by the judgment debtor before the lien of the judgment attached, which the Supreme Court has said leaves no equitable estate in the debtor for a lien to attach to. It is like the case of Bennett v. Stout, 98 Ill. 47, where the court said: "The question to be decided is one of fact. It is: Did Stout purchase the land with his own means and have it conveyed to his wife for the purpose of preventing complainants from collecting their judgment against him?"

Appellants say that the proof shows that the property was bought, not with Elenor Lyman's money, but with Schaaf's. But it is admitted by them, as we understand, that her note to Schaaf represented the money he paid; and she took possession of the premises at once. A question of some difficulty would arise on this assumption, as to the priority of the trust deed from Teed to Schaaf of June 6, 1905, to secure the pay-

ment of Elenor Lyman's $1,600 note if the said trust deed had been contemporaneous with the conveyance to Teed from Brooks on April 14, 1905; but we are not inclined, under all the circumstances shown, to overrule the Chancellor's decision that this trust deed cannot be given that priority to judgment liens sometimes allowed to purchase money mortgages, because, as the Supreme Court says in Blatchford v. Boyden, 122 Ill. 657, "Not of any equity the vendor might be supposed to have for the purchase money of the land, but upon the grounds that the execution of the deed and mortgage being simultaneous acts, the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and vests in the mortgagee without stopping at all in the purchaser, and during such instantaneous passage the judgment lien cannot attach to the title."

But apart from all other and more technical reasons we think that there was sufficient ground for the Chancellor's decree as a whole concerning this property in the proposition that all the circumstances taken together raise a justifiable inference of a definite purpose so to handle it as to hinder and delay creditors, and that all the persons engaged or interested in it and now claiming rights prior to the complainants had notice of this, and must, however valid their claims on the property may be against the heirs of Elenor Lyman, be postponed to the complainants. This disposes also of the claims of Dickerman and Daughters to priority over the right of lien given by the decree to the complainants, and justifies the fourth and fifth ordering clauses of the decree in relation to the receiver and to an account by Daughters for rents heretofore collected.

Viewing the decree as a whole we think it does justice between the parties, and that the bill and proofs are sufficient to sustain it. It is therefore as a whole affirmed.

*Affirmed.*